UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENRIQUE VAZQUEZ, SERGIO ALFONSO LOPEZ, and MARIA VIVEROS, individually and on behalf of themselves and all others similarly situated, | Case No.: 16-cv-2749-WQH-BLM |
| Plaintiffs, | **ORDER** |
| v. | |
| KRAFT HEINZ FOODS COMPANY, | |
| Defendant. | |

HAYES, Judge:

The matters before the Court are the Motion for Class Certification (ECF No. 56) and the Motion to Disqualify Defense Counsel Ford & Harrison LLP (ECF No. 57) filed by Plaintiffs Enrique Vazquez, Sergio Lopez, and Maria Viveros.

I.      **Background**

On May 9, 2017, Plaintiffs Enrique Vazquez, Sergio Lopez, and Maria Viveros filed the Consolidated Class Action Complaint (ECF No. 29) (the "CCAC") against Defendant Kraft Heinz Foods Company.  The CCAC brings claims for (1) failure to pay overtime wages, (2) minimum wage violations, (3) meal period violations, (4) rest period violations, (5) wage statement violations, (6) waiting time penalties, and (7) unfair competition. CCAC at ¶¶ 30–61.

1

On March 16, 2018, Plaintiffs filed the Motion for Class Certification (ECF No. 56) and the Compendium of Evidence in Support of Plaintiffs' Motion for Class Certification (ECF No. 56-1). Plaintiffs seek to certify eleven classes of Kraft Heinz Foods Company ("KHFC") employees based upon allegations that certain employment policies and procedures resulted in underpayment of wages. (ECF No. 56 at 2–4). On April 6, 2018, KHFC filed an Opposition to the Motion for Class Certification and a Compendium of Employee Declarations. (ECF Nos. 59, 59-4).

On March 19, 2018, Plaintiffs filed a Motion to Disqualify Defense Counsel Ford & Harrison LLP (ECF No. 59). On April 9, 2018, KHFC filed an Opposition to Plaintiffs' Motion to Disqualify (ECF No. 63). On April 26, 2018, Plaintiffs filed a Reply in Support of the Motion to Disqualify Defense Counsel Ford & Harrison LLP (ECF No. 65).

On August 8, 2018, the Court heard oral argument on the Motion for Class Certification and the Motion to Disqualify Defense Counsel Ford & Harrison LLP. (ECF No. 83).

## II. Allegations of the Complaint

During Plaintiff Lopez's and Plaintiff Vasquez's employment with Defendants,[1] they routinely worked in excess of eight hours per workday and/or forty hours per workweek, but did not receive overtime compensation equal to one and one half times [their] regular rate of pay for all overtime hours worked. Specifically, . . . Defendants failed to properly calculate Plaintiff Lopez's and Plaintiff Vasquez's regular rate of pay for overtime purposes. . . . Defendants' failure to properly calculate Plaintiff Lopez's regular rate of pay[] led to a systematic underpayment of Plaintiff Lopez's and Plaintiff Vasquez's overtime wages. . . .

While [Plaintiffs were] employed by Defendants, Defendants did, and[,] upon information and belief, still utilize a timekeeping system which resulted in Plaintiffs not being compensated for all hours actually worked, whether by rounding, time-shaving, or otherwise. Specifically, Defendants

---

[1] Plaintiffs' allegations refer to "Defendants," but KHFC is the only defendant named in the CCAC, CCAC at 1, and Plaintiffs' counsel represented at oral argument that KHFC is the only defendant in the case.

rounded Plaintiffs' timekeeping entries in an uneven manner to a quarter of an hour increments so that, over a period of time, they were deprived of all minimum wages as well as additional overtime wages earned. Furthermore, Defendants made other clocked time adjustments to Plaintiffs time records which resulted in the underpayment of all regular and overtime wages.

Defendants also required Plaintiff Lopez to don and doff protective gear while off the clock. Prior to clocking in for the start of his shift, Plaintiff Lopez was required to navigate to a designated changing area, thoroughly wash his hands, and put on protective gear including but not limited to: a hair net, smock, gloves, arm-shield, and non-slip shoes. Similarly, after clocking out at the end of his shift, Plaintiff Lopez was required to remove this protective gear before leaving. Plaintiff Lopez was not compensated for time spent donning and doffing protective gear due to Defendants' policies/practices which do not compensate for this time, and as a result, Plaintiff Lopez was deprived of minimum and overtime wages earned.

CCAC at ¶¶ 14–16.

Plaintiffs were not provided all required meal periods due to Defendants' meal period policies/practices which fail to provide a 30-minute, timely first meal period before the end of the fifth hour of work as well as a second meal period for shifts over 10.0 hours. In practice, Plaintiffs were regularly provided with either a short meal period (less than 30 minutes), late meal (commencing after the conclusion of the fifth hour of work), or no first meal period at all.

*Id.* at ¶ 18.

Defendants failed in their affirmative obligation to provide all of their non-exempt employees in California, including Plaintiffs . . . , with all legally compliant meal periods in accordance with the mandates of the California Labor Code and Wage Order 1, § 11. Despite Defendants' violations, Defendants did not pay an additional hour of pay to Plaintiffs . . . at their respective regular rates of pay, in accordance with California Labor Code §§ 204, 210, 226.7, and 512.

*Id.* at ¶ 40.

As a result of Defendants' failure to pay all overtime wages, minimum wages, as well as meal and rest period premium wages, Defendants maintained inaccurate payroll records and issued inaccurate wage statements to Plaintiffs. As a further result of Defendants' failure to pay all overtime wages, minimum wages, and meal and rest period premium wages, Defendants failed to pay all wages owed to Plaintiffs upon their separation of employment from Defendants.

*Id.* at ¶ 21.

## III. Legal Standard for Class Certification

The party seeking class certification bears the burden of demonstrating that it has met each of the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b). *Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1186 (9th Cir. 2001) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). The four requirements of Rule 23(a) are: "(1) numerosity (a class [so large] that joinder of all members is impracticable); (2) commonality (questions of law or fact common to class); (3) typicality (named parties claims or defenses are typical . . . of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class)." *In re Mego Fin. Corp. Sec. Litig. v. Nadler*, 213 F.3d 454, 462 (9th Cir. 2000) (internal quotations omitted). Plaintiffs seek certification under Rule 23(b)(3), (ECF No. 56 at 28), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," Fed. R. Civ. P. 23(b)(3).

"Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23[] have been satisfied.'" *Id.* at 350–51 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

### Numerosity, Typicality, and Adequacy

Plaintiffs contend that all of the proposed classes satisfy the numerosity requirement because each consists of "at least 150 employees, well in excess of what is required to establish numerosity." (ECF No. 56 at 28) (citing the Expert Report of J. Michael DuMond, Ph.D., ECF No. 56-1, at 411–577). Plaintiffs contend that they "meet the

4

typicality requirement[] because they have suffered the same injuries as a result of the Defendant's policies and practices." *Id.* at 34. Plaintiffs contend that they are adequate class representatives because their "interests are squarely aligned with the interests of the classes, as [they] suffered the same violations, in the same manner, and by the same common policies and practices of Defendant." *Id.* Plaintiffs contend that Plaintiffs' counsel are adequate class representatives because Plaintiffs' counsel "has substantial experience in wage-and-hour class actions." *Id.* KHFC does not contend that Plaintiffs have failed to satisfy the numerosity, typicality, or adequacy requirements. *See* ECF No. 59. The Court finds that all the proposed classes meet the numerosity, typicality, and adequacy requirements of Rule 23(a).

**Commonality, Predominance, and Superiority**

### 1. Commonality

Rule 23(a)(2) makes "questions of law or fact common to the class" a condition of certification. Fed. R. Civ. P. 23(a)(2). To satisfy Rule 23(a)(2), the class members' "claims must depend on a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. This standard "requires plaintiffs to demonstrate that the class members 'have suffered the same injury.'" *Id.* at 349–50 (quoting *Falcon*, 457 U.S. at 157). To do so, plaintiffs must provide "significant proof" that "the entire class was subject to the same allegedly [unlawful] practice." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011).

### 2. Predominance

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The predominance inquiry "presumes [] the existence of common issues of fact or law" and "focuses on the relationship between the common and individual issues" to

determine "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

> An individual question is one where "members of a proposed class will need to present evidence that varies from member to member," while a common question is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012) (internal quotation marks omitted). The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.*, § 4:49, at 195–196.

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (alteration in original). If "individual issues predominate over common issues," certification is not available. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 937 (9th Cir. 2009). Courts determine whether individual issues predominate over common issues by examining the elements of the plaintiffs' claims and the defenses raised by the defendant, as well as the evidence that relates to those elements. *See id.* Common issues can predominate "even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson*, 136 S. Ct. at 1045 (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123–124 (3d ed. 2005)).

District court decisions in this circuit regarding certification of auto-deduct classes vary depending upon the facts of each case. *See e.g. Wilson v. TE Connectivity Networks, Inc.*, No. 14-CV-04872-EDL, 2017 WL 1758048, at *7–11 (N.D. Cal. Feb. 9, 2017) (common issues predominated where certain employees are subject to an auto-deduction policy automatically deduct 30 minutes for a meal break and supervisors had the discretion to override this automatic deduction if they become aware that employees did not, in fact, take a 30-minute break); *Nguyen v. Baxter Healthcare Corp.*, 275 F.R.D. 596 (C.D. Cal. 2011) (common issues predominated where the employer used software which automatically deducted one 30 minute meal break per shift from all employees' time, without regard to whether a first meal break was late or missed); *Dilts v. Penske Logistics,*

*LLC*, 267 F.R.D. 625, 635 (S.D. Cal. 2010) (common questions predominated where there was no question that Defendant deducted thirty minutes per day regardless of whether a break was taken.); *see also Ramirez v. United Rentals, Inc.*, No. 5:10-CV-04374 EJD, 2013 WL 2646648 (N.D. Cal. June 12, 2013) (class certification not appropriate where the evidence suggests a policy of allowing managerial discretion in deciding how to track meal breaks); *Villa v. United Site Servs. of California, Inc.*, No. 5:12-CV-00318-LHK, 2012 WL 5503550 (N.D. Cal. Nov. 13, 2012) (individualized inquiries predominated, in part, because individual managers had discretion as to how to implement the broader policy).

### 3. Superiority

Rule 23(b)(3) also requires "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) instructs courts to consider four factors when determining whether the superiority requirement has been met:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

*Id.*

## IV. Analysis

### A. The Automatic Deduction Classes and the Manual Deduction Classes

Proposed classes 1a and 2a are defined as

> [a]ll current and former non-exempt production employees of Defendant's Legacy Heinz locations, whose timekeeping records reflect a 30 minute deduction of time worked for shifts worked in excess of 6.0 hours where no meal period is reflected in the time punch records, during the time period September 8, 2012 to the present.

("Automatic Deduction Classes") (ECF No. 56 at 2).

Proposed classes 1b and 2b are defined as

All current and former non-exempt production employees of Defendant's Legacy Heinz locations, whose timekeeping records include a manual edit to include both a punch-out record and punch-in record for a purported meal period (accompanied by the following notations: (i) "*O: Punch-Forgot to Punch Out-Lunch*" and "*I: Punch-Forgot to Punch In-Lunch*"; or (ii) "*O: Punch-Forgot to Punch Out*" and "*I: Punch- Forgot to Punch In*"), during the time period September 8, 2012 to the present.

(ECF No. 56 at 2). KHFC supervisors use the notations "O: Punch-Forgot to Punch Out-Lunch," "O: Punch- Forgot to Punch Out," "I: Punch-Forgot to Punch In-Lunch," and "I: Punch-Forgot to Punch In" when they manually edit an employee's timecard to insert a break for a meal period. Deposition of Defendant Kraft Heinz Foods Company FRCP 30(b)(6) Witness Ed Guajardo, ECF No. 56-1 at 228. Classes 1b and 2b seek unpaid wages and meal period premiums, respectively, for meal period time that has been manually deducted. (ECF No. 56 at 23).

Proposed class 1c is defined as

[a]ll current and former non-exempt production employees of Defendant's Legacy Heinz locations whose timekeeping records reflect a deduction of time from the employee's timekeeping records, accompanied by any of the following notations: (i) *UnApproved – Late Out*; (ii) *UnApproved – Late Out – OT*; (iii) *UnApproved – Early In*; or (iv) *UnApproved – Early In – OT*, during the time period September 8, 2012 to the present.

*Id.* at 3. KHFC supervisors use the notations "(i) UnApproved – Late Out," (ii) "UnApproved – Late Out – OT," (iii) "UnApproved – Early In," and (iv) "UnApproved – Early In – OT," when they manually edit an employee's timecard to deduct time that was worked before or after an employee's scheduled shift. Guajardo Depo. at 222; DuMond Report ECF No. 56-1 at 419. Class 1c seeks unpaid wages for pre- or post-shift time that has been manually deducted. (ECF No. 56 at 23). The Court will refer to classes 1b, 1c, and 2b as the "Manual Deduction Classes."

KHFC employees' meal breaks are not scheduled for a particular time, but are "more or less planned by the supervisor or lead on the shift." Guajardo Deposition ECF No. 56-1 at 34. Employees are informed when they should take their meal breaks by a supervisor

or another employee acting under the direction of a supervisor. *Id.* at 34–36. "If [an] employee communicates to the supervisor that they missed a meal and did not stop working, then there is a form that they would need to provide in writing to the supervisor that they missed the meal period . . . ." *Id.* at 220.

KHFC instructs their production employees to punch out for meal breaks and to punch back in when they return to work. *Id.* at 219. KHFC's payroll software automatically deducts thirty minutes from an employee's timecard for shifts on which the employee neither punched in nor punched out for a meal break. *Id.* at 47–48. Economist Jon DuMond reviewed the timekeeping records of 232,161 shifts longer than six hours worked by "non-exempt" KHFC San Diego employees and identified 1,638 shifts for which the auto-deduction was applied (about one out of every 141 shifts). DuMond Report, ECF No. 56-1, at 412–16. Economist Keith Mendes identified 214 shifts longer than six hours worked by "non-exempt" KHFC San Diego employees with no meal period punches where the automatic deduction was not applied (approximately 11% of the shifts longer than six hours with no meal period punches). Declaration of Keith Mendes, ECF No. 59-1, at ¶ 9(e).

Supervisors are trained to log into the system and use a code to manually alter an employee's time record in certain circumstances. (ECF No. 56-1 at 227). For example, if an employee forgot to punch out and in for a meal break, supervisors can manually add a punch in and a punch out for a meal break to that employee's time record. *Id.* at 219. Supervisors do not need written authorization to manually alter an employee's time record; "generally" they do so after speaking with the employee. *Id.* at 220–21. DuMond identified 241 instances of supervisors manually editing an employee's time record to deduct time for a meal break (about one out of every 950 shifts), and 631 instances of supervisors manually editing an employee's time record to deduct time that was worked before or after the employee's scheduled shift (about one out of every 400 shifts). DuMond Report, ECF No. 56-1, at 418–19.

Plaintiff Lopez stated at his deposition that sometimes he would work all day without being relieved for a meal break, and that on those days he did not take a meal break. Deposition of Sergio Lopez, ECF No. 56-1 at 336–37. Lopez stated that, when he did not take a meal break, he did not punch in or out for a meal break. *Id.* at 337. Deposition of Sergio Lopez, ECF No. 59-3, at 14. Twelve KHFC employees declared that they always took meal breaks but sometimes failed to punch in or out. (ECF No. 59-4 at 4). Those same twelve employees declared that they sometimes did not inform their supervisors that they forgot to punch in and out for a meal break. *Id.* Seven employees declared that sometimes they engage in personal activities before clocking out at the end of their work day. *Id.* at 5. Three supervisors and three leads declared that they have been informed by at least one employee that he or she failed to punch in and punch out for a meal period that he or she actually took. *Id.* at 4–5. Three supervisors declared that they never manually deducted time for a meal period without confirming that the meal period was actually taken. *Id.* at 5. Two supervisors declared that they sometimes permitted automatic deductions to occur rather than performing a manual deduction. *Id.*

If KHFC discovered that a deduction was made for a meal period that was actually worked, KHFC "would add one hour of regular earnings to the employee's paycheck." Deposition of Defendant Kraft Heinz Foods Company FRCP 30(b)(6) Witness David Bogan, ECF No. 56-1 at 259. KHFC has "rarely" added an hour of earnings to an employee's paycheck to compensate for a meal period violation. *Id.* at 262.

California law requires employers to pay their employees "for all hours worked." Industrial Welfare Commission Order No. 1-2001 § 4(B).

> California's compensable-time standard encompasses two categories of time. First, time is compensable if an employee is "under the control" of his or her employer, whether or not he or she is engaging in work activities, such as by being required to remain on the employer's premises or being restricted from engaging in certain personal activities. *See* [*Morillon v. Royal Packing Co.*, 995 P.2d 139, 145–47] . . . Second, time is compensable if an employee "is suffered or permitted to work, whether or not required to do so." [*Id.*] at 141 (citing Cal. Code Regs., tit. 8, § 11140, subd. 2(G)). This may include "time

an employee is working but *is not* subject to an employer's control," such as "unauthorized overtime, which the employer has not requested or required." *Id.* . . . at 145–47 (emphasis added).

*Sali v. Corona Reg'l Med. Ctr.*, 889 F.3d 623, 637 (9th Cir. 2018).

California law also requires employers to provide employees with a meal period of at least thirty minutes for shifts of more than five hours. Cal. Lab. Code § 512(a). To satisfy its duty to "provide" a meal or rest break, an employer must "relieve the employee of all duty for the designated period, but need not ensure that the employee does no work." *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1034 (2012). "For time to be compensable when a work break has been provided by the employer, the employee must show that the employer knew or should have known that some of its employees were working through their meal breaks." *Green v. Fed. Exp. Corp.*, 614 F. App'x 905, 907–08 (9th Cir. 2015) (citing *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 546 (9th Cir. 2013)). "If an employer fails to provide an employee a meal . . . period in accordance with a state law, . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal . . . period is not provided." Cal. Lab. Code § 226.7(c). This extra hour of pay is referred to as a "meal period premium." *See*, *e.g.*, *Williams v. Superior Court*, 398 P.3d 69, 77 (Cal. 2017).

### 1. Commonality

Plaintiffs contend that the Automatic Deduction Classes had time deducted from their time records pursuant to KHFC's policy of automatically deducting thirty minutes for shifts of over six hours without time punches for meal periods. Plaintiffs contend that the Manual Deduction Classes had time deducted from their time records pursuant to KHFC's policy allowing managers to deduct time without written employee authorization. These common policies establish whether class members had time deducted from their records and establish whether the class members personally punch out. These issues are central to the validity of the claims of the deduction classes satisfying the commonality requirement of Rule 23(a).

### 2. Predominance

Plaintiffs contend that "[c]lass certification is routinely granted in cases where an employer automatically deducts time from an employee's daily hours worked for a purported meal period without any evidence that the meal period was actually provided to the employee." (ECF No. 56 at 15). Plaintiffs contend that the "theory of liability regarding the auto-deduct rule (i.e., that the employee did not receive any meal period whatsoever, but nevertheless had 30 minutes of earned wages stolen from him) is amenable to classwide proof for the following three reasons": (1) "Defendant is solely responsible for relieving production employees for meal periods," (2) "Defendant has trained its supervisors to review putative class members' timecards and manually insert a meal period if the employee actually received a meal period during the shift but failed to punch out/in for the meal period," and (3) "Defendant has not maintained any mechanism for the payment of Section 226.7 meal period premium payments." (ECF No. 56 at 29–30). Plaintiffs contend that the Manual Deduction Classes "have been injured in virtually the same fashion" as the Automatic Deduction Classes. *Id.* at 30–32.

KHFC contends that "determining which auto-deductions removed break time and which auto-deductions removed working time would entail a massive undertaking into the minutia of each employees' recollections from a relatively few work shifts years in the past." (ECF No. 59 at 16). KHFC contends that the Manual Deduction Classes' claims are incapable of class-wide resolution because class members cannot show that manual deductions represented working time.

**Automatic Meal Deduction Classes 1a and 2a**

In this case, KHFC's payroll software automatically deducts thirty minutes from an employee's timecard for shifts on which the employee neither punched in nor punched out for a meal break. KHFC policy requires employees to punch in and out for meal periods. KHFC trains supervisors to manually insert a meal period into an employee's time records in the event that an employee received a meal period and did not clock out. The record in this case does not contain any evidence of managerial discretion in deciding how to implement the broader company policies tracking meal breaks.

Plaintiffs intend to prove that the Automatic Deduction Classes did not take meal periods by referencing the time records, which demonstrate that class members did not punch out or back in for a meal break on specific days. Time records indicating that an employee did not punch out or in for a meal break present common evidence that an employee subject to the automatic deduction did not take a meal break. *See Tyson Foods*, 136 S. Ct. at 1045 (2016) ("[A] common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" (second alteration in original)). The Court finds that common issues susceptible to class-wide proof are more prevalent than individual issues in determining whether an employee actually took a meal period on a certain day. *See Torres v. Mercer Canyons Inc.,* 835 F.3d 1125, 1136 (9th Cir. 2016) ("[E]ven a well-defined class may inevitably contain some individuals who have suffered no harm as a result of a defendant's unlawful conduct."). Accordingly, the Court finds that the Automatic Meal Deduction Classes 1a and 2a satisfy the predominance requirement.[2] Plaintiff's motion to certify Classes 1a and 2a is granted.

**Manual Meal Deduction Classes 1b and 2b**

Manual Meal Deduction Class members rely upon the fact that the employee did not punch out or in for a meal break to show that the employee did not take a meal. However, manual edits made to the time records by supervisors provide individualized evidence that the employees whose time records were edited did take a meal break on the days in question. Plaintiffs contend that supervisors' manual deductions to employees' time records are not persuasive evidence that an employee took a meal break because KHFC does not require supervisors to obtain approval from employees before editing employees'

---

[2] The Court also finds that the superiority requirement has been satisfied for the Auto-Deduction Classes. The members of the Automatic Deduction Classes have little interest in controlling the prosecution of their separate actions, and that interest can be protected by opting out of the class. The Court is not aware of any other litigation that has been initiated by the members of the Automatic Deduction Classes.

time records. KHFC contends that the supervisors' manual deductions to employees' time records are persuasive evidence that an employee took a meal break because supervisors verified that an employee actually took a meal period before making a manual deduction.

The claims of the Manual Deduction Classes rely upon the procedures followed by supervisors making a manual deduction. There is no evidence in the record of a KHFC policy that establishes the procedure that supervisors must follow before making a manual deduction. The claims of the manual class members will involve examining the procedures that individual supervisors follow before making manual deductions on a supervisor by supervisor basis. The Court finds that individual issues concerning the procedures followed by each supervisor predominate over the common issues implicated by the claims of the Manual Meal Deduction Classes. The Manual Meal Deduction Classes 1b and 2b do not satisfy the predominance requirement. Plaintiffs' motion to certify classes 1b and 2b is denied.

**Overtime Deduction Class 1c**

To recover on their claims for unpaid wages, the Overtime Deduction Class must prove that they worked the pre- or post-shift time that was manually deducted from their time records or that they were under KHFC's control during that time. *See Sali,* 889 F.3d at 637. The Court of Appeals recently addressed whether common or individual issues predominated in a similar situation in *Sali v. Corona Reg'l Med. Ctr.*, 889 F.3d 623 (9th Cir. 2018). In *Sali*, the plaintiffs sought certification of a class of registered nurses ("RN"s) who were subject to a policy that rounded their punches in and out. *Sali*, 889 F.3d at 638. Defendants argued that the "time records [were] not a reliable indicator of the time RNs actually spent working because RNs frequently clock-in for work and then perform non-compensable activities, such as waiting in the break room, getting coffee, or chatting with their co-workers, until the start of their scheduled shift." *Id*. at 636. The District Court reasoned that "determining whether Defendants underpaid members of the Rounding Time Class would entail factualized inquiries into whether particular RNs were actually working

during the grace period, and whether the rounding of time during this period resulted in the underpayment of hours actually worked." *Id.*

The Court of Appeals concluded that the district court "clearly misapplied California law." *Id.* The Court of Appeals noted that employees must be paid for two categories of time: (1) when they are "under the control" of their employer, and (2) when they are "working but [] not subject to an employer's control." *Id.* at 637 (citing *Morillion*, 995 P.2d at 141). The Court of Appeals held that "[t]he district court did not abuse its discretion to the extent it concluded that individualized questions predominate on whether the RNs fall within the second category, which amounts to a question of whether they engaged in work activities even if they were not required to do so." *Id.* The Court of Appeals held that the "'employer control' question necessarily requires an employer-focused inquiry into whether [the defendant] had a policy or practice that restricted RNs in a manner that amounted to employer control during the period between their clock-in and clock-out times" and consequently was "capable of class-wide resolution." *Id.* at 637–38. The Court of Appeals held that, "[a]ccordingly, the district court abused its discretion by denying certification of the rounding-time class on the basis of predominance." *Id.* at 638.

In this case, determining whether the members of the Overtime Deduction Class were under KHFC's control during the pre- and post-shift time manually deducted from their time records "requires an employer-focused inquiry into whether [KHFC] had a policy or practice that restricted [the members of the Overtime Deduction Class] in a manner that amounted to employer control during the period between their clock-in and clock-out times." *Id.* at 637–38. Accordingly, the Court finds that the predominance requirement of Rule 23(b)(3) is satisfied for the Overtime Deduction Class 1c. Plaintiffs' motion to certify Classes 1c is granted.

### B. The Late Meal Period Class 2c

Proposed class 2c is defined as "[a]ll current and former non-exempt production employees of Defendant's San Diego location whose timekeeping records reflect a meal period commencing after the employee had worked for 5.0 hours or more, during the time

period September 8, 2012 to the present" (the "Late Meal Period Class"). (ECF No. 56 at 4).

KHFC employees are informed when they should take their meal breaks by a supervisor or another employee acting under the direction of a supervisor, and employees are required to punch out for meal breaks. Guajardo Depo. ECF No 56-1 at 34–36, 219. Six supervisors declared that they always schedule employees' meal breaks to start before the end of the fifth hour of an employees' shift. (ECF No. 59-4 at 6). Eleven supervisors and employees declared that employees sometimes make a personal decision to punch out later than their scheduled meal times. *Id.* at 6–7. For example, production employee Miguel Garcia declared that "[o]n rare occasions," he "voluntarily elected to take a meal break a little bit later than 5 hours for personal reasons," and that, on these occasions, he "had the opportunity to take the break before 5 hours of work, but chose[] not to." Declaration of Miguel Garcia, ECF No. 59-4, at 81.

DuMond identified 26,664 shifts where an employee did not punch out for a meal period until after the employee had worked a full five hours (about one in every nine shifts). DuMond Report ECF No. 56-1 at 422. DuMond identified 4,119 shifts where an employee did not punch out for a meal period until after the employee had worked a full five hours and fifteen minutes. *Id.* DuMond identified 2,492 shifts where an employee did not punch out for a meal period until after the employee had worked a full five hours and thirty minutes. *Id.*

Plaintiffs contend that KHFC violates California law when a production employee's first meal period does not commence until after the employee has worked five hours because KHFC is the party scheduling meal periods. ECF No. 56 at 24; *see also* CCAC at ¶ 18 (alleging that Plaintiffs "were regularly provided . . . late meal [periods]" and that "Plaintiff Viveros was not provided a first meal period until she was relieved by a 'floater.'"). Plaintiffs contend that the time records of the Late Meal Period Class are persuasive evidence of the time at which the members of the Late Period Class were relieved of all duty for their meal breaks in light of KHFC policies which require employees

to punch out for meal periods and make supervisors responsible for relieving employees for meal periods. KHFC does not dispute that it schedules production employees' meal periods. However, KHFC contends that it did not violate California law when it provided a timely meal period but an employee forgot to leave for lunch, chose to take it later, or engaged in personal activities just prior to clocking out.

California law requires employers to provide a first meal period "no later than the start of an employee's sixth hour of work." *Brinker*, 53 Cal. 4th at 1041. To satisfy its duty to "provide" a meal period, an employer must "relieve the employee of all duty for the designated period, but need not ensure that the employee does no work." *Id.* at 1039. To recover on their claims for unpaid wages, the Late Meal Period Class must show that, on the days in question, they were not "relieved of all duty" for their first meal period until after the end of their fifth hour of work. *Id.*

The Late Meal Period Class intends to rely upon time records to show that, on the days in question, class members did not punch out for their first meal period until after the end of their fifth hour of work. Plaintiffs have presented significant evidence that KHFC employees' meal breaks are not scheduled for a particular time, and that employees are informed when they should take their meal breaks by a supervisor or another employee acting under the direction of a supervisor. KHFC's meal break policy will resolve important issues directly impacting the resolution of the claims of the Late Meal Period Class. Plaintiffs have presented substantial evidence that KHFC does not pay production employees a premium for late meal periods. The Court finds that Plaintiffs have satisfied the commonality and predominance requirements. *See Torres v. Mercer Canyons Inc.,* 835 F.3d 1125, 1136 (9th Cir. 2016) ("[E]ven a well-defined class may inevitably contain some individuals who have suffered no harm as a result of a defendant's unlawful conduct."). The Court finds that the Late Meal Period Class 2c satisfies the predominance requirement. Plaintiffs' motion to certify class 2c is granted.

### C.    The Pre-Shift Donning Class 1d

Proposed class 1d is defined as "[a]ll current and former non-exempt production employees at Defendant's California locations who were required to don protective gear prior to clocking in for the scheduled start of their shift, during the time period September 8, 2012 to the present" (the "Pre-Shift Donning Class"). (ECF No. 56 at 3).

KHFC food production employees are required to wear protective equipment when they work, including coats, smocks, hair nets, hard hats, beard nets, face shields, glasses, ear plugs, gloves, non-slip shoes, and shoe covers. *See* ECF No. 56 at 22 n. 18 (collecting deposition testimony). Three KHFC employees stated in their depositions that they were required and instructed by their supervisors to don at least some of this protective gear before punching in at the beginning of their shift. *See id.* at 22 n. 19 (collecting deposition testimony); (ECF No. 59 at 23–24) (refuting Plaintiffs' characterization of certain deposition testimony). Lopez stated that his supervisor's assistant told him that he was required to clock in with his protective equipment already on at a meeting that was only for employees in "kitchen, first shift." Deposition of Sergio Lopez, ECF No. 59-3, at 6–9. Francisco Hernandez stated that four different people told his "line" of twenty to twenty-five people that they "ha[d] to punch in to start work, not punch in to put on your work gear"—one person from quality control, one supervisor, one "coordinator," and one "line coordinator." Deposition of Francisco Hernandez, ECF No. 59-3, at 58–59. Hernandez stated that his "line" was the biggest group that he heard given this instruction "because [his] line was the biggest one of all." *Id.* at 58.

Sixteen employees declared that they punched in prior to donning their protective equipment. (ECF No. 59-4 at 7). Fifteen employees declared that they voluntarily donned their protective equipment prior to punching in but were not required to do so. *Id.* at 7–8. Six supervisors and leads declared that they have never instructed any production employee to don his or her protective equipment before punching in. *Id.* at 8–9.

Plaintiffs have defined the Pre-Shift Donning Class as "[a]ll . . . employees . . . who were *required* to don protective gear prior to clocking in." (ECF No. 56 at 3). This definition requires an inquiry into whether an employee was "required to don protective

gear prior to clocking in" occur in order to determine whether an employee is a member of the Pre-Shift Donning Class. (ECF No. 56 at 3).

Courts require that the class definition must identify "a distinct group whose members could be identified with particularity." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). "A class definition is sufficient if the description of the class is definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 237 (N.D. Cal. 2014) (internal quotations omitted). For it to be administratively feasible for a court to ascertain who is a member of a certain class, "identifying class members [must be] a manageable process that does not require much, if any, individual factual inquiry." *Lilly*, 308 F.R.D. at 237 (quoting Newberg § 3:3).

In this case, Plaintiffs have not presented evidence of a KHFC policy requiring production employees at KHFC's California locations to don their protective gear before clocking in. The evidence before the Court indicates that some supervisors may require employees to clock in with their protective gear already on, and other supervisors may not. Determining whether a production employee was required to don protective gear before clocking in will require individual factual inquiries into the instructions given to each employee by his or her particular supervisors.

Plaintiffs contend that "determining whether a member of [the Pre-Shift Donning Class] has been injured can be answered by one very simple question posed to the class member: do you put on any protective gear before clocking in for your shift?" (ECF No. 77 at 13). However, asking production employees whether they *put on* their protective equipment prior to their shift does not address whether they were *required* to do so, and therefore does not determine whether they are a member of the Pre-Shift Donning Class. *See* ECF No. 56 at 3 (defining the Pre-Shift Donning Class as "[a]ll current and former non-exempt production employees at Defendant's California locations who were required to don protective gear prior to clocking in for the scheduled start of their shift, during the time period September 8, 2012 to the present").

The Court finds that the Pre-Shift Donning Class does not satisfy Rule 23(b)(3) because Plaintiffs have not established that determining who is a member of the Pre-Shift Donning Class would be administratively feasible. Plaintiff's motion to certify class 1d is denied.

### D. Rest Period Classes 3a and 3b

Proposed class 3a is defined as "[a]ll current and former non-exempt production employees of Defendant's California locations, who have worked a shift greater than 3.5 hours, during the time period September 8, 2012 to the present" (the "Rest Period Equipment Class") (ECF No. 56 at 4).

Proposed class 3b is defined as "[a]ll current and former non-exempt production employees of Defendant's San Diego location, who have worked a shift greater than 3.5 hours, during the time period September 8, 2012 to the present" (the "Rest Period Location Class"). (ECF No. 56 at 4).

Plaintiffs contend that KHFC violated California law by not permitting the Rest Period Equipment Class to take paid "duty-free" rest periods that last at least ten minutes. (ECF No. 56 at 25–26). Plaintiffs contend that KHFC provided the class fifteen-minute rest periods but the class spent more than five of those minutes donning and doffing their protective equipment. Plaintiffs contend that the time spent donning and doffing the protective equipment is not duty-free because employees are required to don and doff their protective equipment in certain sterile areas. Plaintiffs further contend that KHFC violated California law by limiting the movement of the Rest Period Location Class during rest periods and requiring the Rest Period Location Class to take rest periods in "designated break areas," *id.* at 26 (citing ECF No. 56-1 at 16).

KHFC contends that no policy limits the movement of employees during rest periods. KHFC asserts that employees may come and go during break periods limited only by time limits of the break.

Under California law, "[e]very employer shall authorize and permit all employees to take rest periods . . . at the rate of ten (10) minutes net rest time per four (4) hours or

major fraction thereof." Industrial Welfare Commission Order No. 1-2001 § 12(A). "[D]uring rest periods employers must relieve employees of all duties and relinquish control over how employees spend their time." *Augustus v. ABM Sec. Servs., Inc.*, 385 P.3d 823, 832 (Cal. 2016), *as modified on denial of reh'g* (Mar. 15, 2017).

Initially, the Court concludes that Plaintiffs did not plead the theories of liability supporting the rest period classes in the CCAC. "Where the claim or theory underlying a proposed class is absent from the operative complaint, class certification is generally improper." *Junod v. NWP Servs. Co.*, No. 814CV1734JLSJCGX, 2016 WL 6306030, at *5 (C.D. Cal. July 18, 2016). The Court further concludes that Plaintiff has failed to provide any evidence of common policy or procedure to support the theories underlying these classes and failed to describe the classes in a manner sufficient to ascertain who is a member of the class. The record contains no evidence of a policy limiting the movements of the employees during the rest periods. Plaintiffs' motion to certify the Rest Period Equipment Class 3a and the Rest Period Location Class 3b is denied.

## E. The Wage Statement Class and the Waiting Time Class

Proposed class 4 is defined as "[a]ll members of Class 1a, 1b, 1c, 1d, 2a, 2b, 2c, 3a, and/or 3b, who meet the criteria for class membership for the time period September 8, 2015 to the present, and who also received a wage statement from Defendant during this same time period" (the "Wage Statement Class"). (ECF No. 56 at 4).

Proposed class 5 is defined as "All members of Class 1a, 1b, 1c, 1d, 2a, 2b, 2c, 3a, and/or 3b, who have separated their employment from Defendant during the time period September 8, 2013 to the present" (the "Waiting Time Class").

Plaintiffs contend that the Wage Statement Class and the Waiting Time Class

are derivative of Classes 1 through 3, and therefore, should any of these underlying classes be certified, so should these derivative classes. *See e.g., Lubin v. Wackenhut Corp.,* 5 Cal. App. 5th 926, 960 (2016) ("[B]ecause plaintiffs' meal and rest period claims are suitable for class treatment, their theory that the wage statements failed to include premium wages earned for missed meal and rest periods also is suitable for class treatment."); *Bradley, supra*, 211 Cal. App. 4th [1129,] 1134, 1136 [(Cal. Ct. App. 2012)] (holding

trial court erred in denying certification as to derivative waiting time penalties class to the extent it was "based on plaintiffs' overtime and/or meal and rest break claims.").

(ECF No. 56 at 33–34). KHFC does not dispute this contention. *See* ECF No. 59.

The Court finds that the requirements of Rule 23(a) and Rule 23(b)(3) are met for the class 4 and class 5 as follows:

1. All members of Class 1a, 1c, 2a, and/or 2c, who meet the criteria for class membership for the time period September 8, 2015 to the present, and who also received a wage statement from Defendant during this same time period

2. All members of Class 1a, 1c, 2a, and/or 2c, who have separated their employment from Defendant during the time period September 8, 2013 to the present.

## V.    Motion to Disqualify Counsel

Plaintiffs move for an order disqualifying defense counsel Ford & Harrison LLP ("Ford & Harrison") from serving as counsel for KHFC. (ECF No. 57 at 2). KHFC's motion is based on the assertion that Daniel Chammas, a partner with Ford & Harrison, represented two potential class members, Jose Gonzalez and Bertha Gonzalez, at their deposition in this matter. *See* ECF No. 57. Ford & Harrison represented Jose Gonzalez and Bertha Gonzalez "for the limited purpose of preparing [them] for and defending [their] deposition[s]." (ECF No. 63-1 at 9, 16). "This representation end[ed] after [their] deposition[s]." *Id.*

"As a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless [a client or] former client moves for disqualification." *Kasza v. Browner*, 133 F.3d 1159, 1171 (9th Cir. 1998). However,

non-client litigants may have standing to move for disqualification of counsel in cases where they have a sufficient "personal stake" in the motion because "the ethical breach so infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of her claims[.]"

*Smith v. Cook*, No. 17-CV-00961-AJB-WVG, 2018 WL 1185221, at *3 (S.D. Cal. Mar. 7, 2018) (alteration in original) (quoting *Colyer v. Smith*, 50 F. Supp. 2d 966, 971 (C.D. Cal. 1999)).

KHFC contends that "Plaintiffs' motion to disqualify should be denied because Plaintiffs have not satisfied their burden of showing that the alleged ethical violation will infect the litigation going forward and have an impact on the just and lawful determination of their claims." (ECF No. 63 at 23). "Plaintiffs disagree, and assert that the continuing effect of Ford & Harrison's improper conduct can be seen from the . . . declarations from other putative class members," which Plaintiffs contend Ford & Harrison "manufactured . . . without regard to actual facts." (ECF No. 65 at 10).

Plaintiffs contend the "manufactur[ing]" of the declarations of KHFC employees will infect the litigation going forward and will impact the just and lawful determination of their claims. *Id.* However, the Motion for Disqualification focuses on Ford & Harrison's representation of Jose and Bertha at their depositions. The Court finds that Plaintiffs have not demonstrated that Ford & Harrison's representation of Jose and Bertha at their depositions so infects this litigation that it impacts the Plaintiffs' interest in a just and lawful determination of their claims. Accordingly, the Court denies Plaintiffs' Motion for Disqualification. *See Smith v. Cook*, 2018 WL 1185221 at *3 (quoting *Colyer*, 50 F. Supp. 2d at 971).

Plaintiffs further request that the Court take judicial notice of an Order issued in *Acosta v. Southwest Fuel Mgmt., Inc., et al.,* Case No. CV 16-4547 FMO (AGRx) (C.D. Cal. Feb. 20, 2018) and an Order issued in *Richardson v. Interstate Hotels and Resorts, Inc.*, *et al.*, Case No. CV-06772-WHA (N.D. Cal. Mar. 12, 2018). (ECF No. 57-2 at 2). Plaintiffs' request for judicial notice is granted.

In *Acosta*, the defendant had interviewed thirty-seven potential class members and submitted their declarations to the Court. *Id.* at 11. The district court excluded those witnesses and their declarations, enjoined the defendants and their counsel from communicating with potential class members about matters related to the case, and

fashioned other forms of relief designed to ensure that class members did not feel obligated to speak to defense counsel. *Id.* at 11–14. The Court did not disqualify defense counsel. *Id.*

In *Richardson*, defense counsel represented fourteen potential class members at their depositions and submitted the declarations of those potential class members. *Id.* at 25. The district court held that "[d]efense counsel plainly violated California Rule of Professional Conduct 3-310(C) [] when they . . . represent[ed] the declarants at their depositions without obtaining informed written consent beforehand." *Id.* at 27. The district court concluded that "defense counsel could be disqualified entirely from the case as a result," but allowed defense counsel to continue representing the Defendant with the following conditions: (1) nothing procured by defense counsel from the employees that they represented could be used in the case; (2) defense counsel could not cross-examine any employees they represented; and (3) "[p]ossibly, the jury will be informed as to the facts underlying defense counsel's representation of hotel employees." *Id.* at 28.[3]

The Court finds that neither *Acosta* nor *Richardson* requires the Court to disqualify Ford & Harrison. Defense counsel was not disqualified in either case. *Id.* at 11–14, 28. In this case, Ford & Harrison obtained Bertha and Jose's written consent before representing them at their depositions, unlike counsel in *Richardson*. Declaration of Daniel B. Chammas in Support of Defendant's Opposition to Plaintiffs' Motion to Disqualify, ECF No. 63-1, at ¶ 8. The motion to disqualify is denied.

/ / /

---

[3] In their Motion for Disqualification, Plaintiffs do not request any relief other than the disqualification of Ford & Harrison. *See* ECF No. 57.

IT IS HEREBY ORDERED that Motion for Class Certification (ECF No. 56) is granted as to Class 1a, 2a, 1c, 2c, Class 4 (as stated in this order) and Class 5 (as stated in this order) and otherwise denied. Plaintiff shall prepare a proposed order, serve the proposed order on the Defendant, and submit the order to the Court.

IT IS FURTHER ORDERED that the Motion to Disqualify Defense Counsel Ford & Harrison LLP (ECF No. 57) is denied.

Dated: October 9, 2018

Hon. William Q. Hayes
United States District Court

16-cv-2749-WQH-BLM