**HAINES LAW GROUP, APC**
Paul K. Haines (SBN 248226)
  *phaines@haineslawgroup.com*
Tuvia Korobkin (SBN 268066)
  *tkorobkin@haineslawgroup.com*
Sean M. Blakely (SBN 264384)
  *sblakely@haineslawgroup.com*
222 N. Sepulveda Blvd., Suite 1550
El Segundo, California 90245
Phone: (424) 292-2350
Fax: (424) 292-2355

Attorneys for Plaintiffs and the Certified Classes

[*Additional Counsel, Next Page*]

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENRIQUE VAZQUEZ, SERGIO ALFONSO LOPEZ, and MARIA VIVEROS, individually and on behalf of themselves and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>KRAFT HEINZ FOODS COMPANY, a Pennsylvania Corporation, and DOES 1 through 25, inclusive,<br><br>Defendants. | CASE NO: 16-CV-02749-WQH (BLM)<br>  Consolidated w/<br>CASE NO: 17-cv-00077-WQH (BLM)<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Date:       TBD**<br>**Crtroom:    14B**<br><br>**No Oral Argument Unless Requested By Court**<br><br>Action filed:   September 8, 2016<br>Removed:      November 7, 2016<br>Trial Date:     None set |

**COHELAN KHOURY & SINGER**
Isam C. Khoury (SBN 58759)
    *ikhoury@ckslaw.com*
Michael D. Singer (SBN 115301)
    *msinger@ckslaw.com*
Diana M. Khoury (SBN 128643)
    *dkhoury@ckslaw.com*
Marta Manus, (SBN 260132)
    *mmanus@ckslaw.com*
605 C Street, Suite 200
San Diego, CA 92101
Telephone:  (619) 595-3001 / Facsimile: (619) 595-3000

**LAW OFFICES OF SAHAG MAJARIAN II**
Sahag Majarian, II (SBN 146621)
    *sahagii@aol.com*
18250 Ventura Blvd.
Tarzana, CA 91356
Telephone:  (818) 609-0807 / Facsimile: (818) 609-0892

Attorneys for Plaintiffs and the Classes

Memorandum of Points and Authorities ISO Motion for
Order Granting Preliminary Approval                    Case No. 16-CV-02749-WQH

PLEASE TAKE NOTICE that there will be no oral argument unless requested by the Court.  PLEASE TAKE FURTHER NOTICE that Plaintiffs Enrique Vazquez, Sergio Alfonso Lopez, Maria Viveros, and Xochitl Lozano (referred to collectively as "Plaintiffs"), individually and on behalf of all others similarly situated will, and hereby do, move this Court to:

1.     Preliminarily approve the non-reversionary Gross Settlement Amount of at least $3,000,000, as set forth in the Stipulation of Class Action Settlement ("Settlement Agreement"), attached as Exhibit "A" to the Declaration of Paul K. Haines ("Haines Decl.") submitted in support herewith;

2.     Affirm certification of the six Classes described in the Court's Order Granting Class Certification [Dkt. 88], and Conditionally Certify, for Settlement purposes, a class consisting of all non-exempt production employees who have worked for Defendant in the state of California during the relevant time period.

3.     Approve the Notice of Class Action Settlement and the Change of Address form attached as Exhibits 1 and 2 to the Settlement Agreement;

4.     Affirm the appointment of Class Counsel:  Haines Law Group, APC; Cohelan, Khoury & Singer; and the Law Office Sahag Majarian II;

5.     Affirm the appointment of Plaintiffs Enrique Vazquez, Sergio Lopez and Maria Viveros as the Class Representatives, and approve and appoint Plaintiff Xochitl Lozano as an additional Class Representative;

6.     Appoint CPT Group, Inc., as the Administrator;

7.     Preliminarily approve Service Payment awards to Plaintiffs Enrique Vazquez, Sergio Lopez and Maria Viveros in the sum of up to $7,500 each and to Plaintiff Xochitl Lozano in the sum of up to $3,000 for their service, efforts, risks, and burdens of acting on behalf of the Class;

8.      Preliminarily approve the application of Class Counsels' reasonable attorneys' fees of one-third of the Gross Settlement Amount, and reasonable costs of up an estimated cap of $175,000;

- 1 -

9.      Approve as to form and content the proposed Notice of Class Action Settlement and directing its distribution to all members of the Class; and

10.      Setting a date, time and place to conduct the Final Approval Hearing on Plaintiffs' Motion for Order Granting Final Approval of Class Action Settlement, which will include Class Counsels' request for an award of attorneys' fees, litigation costs, Class Representative Service Payments, and Administration expenses.

This Motion is made on the grounds that Plaintiffs Enrique Vazquez, Sergio Alfonso Lopez, Maria Viveros, and Xochitl Lozano (collectively "Plaintiffs") and Defendant Kraft Heinz Foods Company ("Defendant" or "KHFC"), have reached a proposed Settlement which they believe to be fair, reasonable and adequate and in the best interests of the Class.

This motion is based on this Notice of Motion, the Memorandum of Points and Authorities, Declarations of Paul K. Haines and Michael D. Singer, the Settlement Agreement and its exhibits, the [Proposed] Order Granting Preliminary Approval of the Class Action Settlement filed and served herewith, and any other documents or evidence which the Court may consider when ruling on this motion for order granting preliminary approval.

Respectfully submitted,

**THE HAINES LAW GROUP, APC**
**COHELAN KHOURY & SINGER,**
**LAW OFFICE OF SAHAG MAJARIAN II**

Date: July 9, 2019               By:/s/ *Paul K. Haines*_____

Attorneys for Plaintiffs and the Class

1

## **TABLE OF CONTENTS**

2  I. INTRODUCTION ...................................................................1

3  II. THE PARTIES AND THE CLASS ...........................................2

4      A. Defendant, Kraft Heinz Foods Company, "KHFC" ...................2

5      B. Plaintiffs ...........................................................2

6      C. The Class ...........................................................2

7  III. BRIEF SUMMARY OF LITIGATION HISTORY ...........................3

8  IV. THE PROPOSED SETTLEMENT AND CLASS NOTICE .................6

9      A. The Terms of the Settlement ..........................................6

10     B. Formula for Distribution of NSA to Participating Class Members............7

11  V. THE COURT SHOULD PRELIMINARILY APPROVE THE CLASS

12  ACTION SETTLEMENT AND SET A FINAL FAIRNESS HEARING..................8

13     A. Class Action Settlements are Subject to Court Review and Approval8

14     B. The Proposed Settlement is Fair, Reasonable and Adequate ......................8

15         1. Strength of Plaintiffs' Case .................................................9

16         2. Risk, Expense, Complexity, and Duration of Further Litigation.........9

17         3. Risk of Maintaining Class Action Status ..........................................10

18         4. The Settlement Is a Reasonable Compromise of Claims..................10

19             a. Class 1a: (Unpaid Wages: Automatic 30 Minute

20                 Unauthorized Meal Deductions – Legacy Heinz

21                 Locations) ...............................................................11

22             b. Class 2a: (Meal Periods: Automatic 30 Minute

23                 Unauthorized Meal Deductions – Legacy Heinz

24                 Locations) ...............................................................11

25             c. Class 1c: (Unpaid Wages – Unauthorized Deductions

26                 for "Unapproved" Hours Worked – Legacy Heinz

27                 Locations) ...............................................................12

28

d. Class 2c: (Meal Period Class – Late Meals –

San Diego) ............................................................13

e. Class 4: (Wage Statement Class) ...............................................13

f. Class 5: (Waiting Time Penalty Class) .................................14

g. PAGA Aggrieved Employees....................................................15

h. All Participating Class Members...............................................17

5. Discovery Completed and the Status of Proceedings ......................18

6. The Experienced Views of Counsel...................................................18

C. The Preliminary Approval Standard is Met.................................................18

1. The Settlement is Within the Range of Possible Approval ..............19

2. The Settlement Resulted from Serious, Informed, and

Non-Collusive Negotiations................................................................19

3. The Settlement is Devoid of Obvious Deficiencies..........................19

D. The Class Notice and Release of Claims....................................................19

VII. CONCLUSION ......................................................................................................20

1

## **TABLE OF AUTHORITIES**

2
**Federal Cases**

3
*China Agritech, Inc. v. Resh,* 138 S. Ct. 1800 (2018) ...............................17

4
*Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566 (9th Cir. 2004) ...........20

5
*Class Plaintiffs v. Seattle,* 955 F.2d 1268 (9th Cir. 1992).........................19

6
*Franklin v. Kaypro Corp.*, 884 F.2d 1222 (9th Cir. 1989).........................8

7
*In re Pacific Enterprises Securities Litigation*, 47 F.3d 373 (9th Cir. 1995)............18

8
*Maldonado v. Epsilon Plastics, Inc.,* 22 Cal.App.5th 1308 (2018)..........................14

9
*National Rural Tele. Coop. v. DIRECTTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004).10

10
*Patel v. Nike Retail Svcs., Inc.*, 58 F.Supp.3d 1032 (N.D. Cal. 2014) .....................15

11
*Rodriguez v. West Publishing Corp.,* 563 F.3d 948 (9th Cir. 2003) ..........................8

12

13
**State Cases**

14
*Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1207 (2008).........................15

15
*Arias v. Superior Court*, 46 Cal.4th 969 (2009) .......................................10

16
*Carrington v. Starbucks Corp.,* 30 Cal.App.5th 504 (2018) ....................................16

17
*Kim v. Reins Internat. California, Inc.*, 18 Cal.App.5th 1052 (2017).....................16

18
*Kirby v. Immoos Fire Protection, Inc.*, 53 Cal. 4th 1244 (2012) .......................14, 15

19
*Kullar v. Foot Locker Retail, Inc.*, 168 Cal.App.4th 116 (2008) ..............................9

20
*See's Candy Shops, Inc. v. Superior Court,* 210 Cal.App.4th 889 (2012) ...............17

21
*Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal.App.4th 1112 (2012) .........15, 16

22

23
**Federal Statutes and Rules**

24
29 C.F.R. § 785.48(b) ................................................17

25
Fed. R. Civ. Proc. 23(e)(2) ...............................................8, 20

26

27
**State Statutes and Rules**

28
California Labor Code § 2699(e)(2) ................................................15, 16

- 3 -

1

2 <u>**Unpublished Cases**</u>

3 *Chu v. Wells Fargo Investments, LLC*

4     2011 WL 672645 (N.D. Cal. 2011) ................................................................. 16

5 *Fleming v. Covidien, Inc.*

6     Case No. ED-CV-10-1487-RGK(OPx)

7     2011 WL 7563047 (C.D. Cal. Aug. 12, 2011) ................................................ 16

8 *Garcia v. Gordon Trucking, Inc.*

9     Case No. 1:10-CV-0324 AWI SKO

10     2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) ................................................ 16

11 *Gribble v. Cool Transports Inc.*

12     Case No. CV 06-04863 GAF SHx

13     2008 WL 5281665 (C.D. Cal. Dec. 15, 2008) ................................................ 18

14 *Hopson v. Hanesbrands Inc.*

15     Case No. CV-08-0844 EDL

16     2008 WL 3385452 (N.D. Cal. Aug. 8, 2008) ................................................. 16

17 *In re First Capital Holdings Corp. Financial Products*

18     Case No. MDL No. 901

19     1992 WL 226321 (C.D. Cal. June 10, 1992) ................................................. 19

20 *Lazarin v. Pro Unlimited, Inc.*

21     2013 WL 3541217 (N.D. Cal. 2013) .............................................................. 16

22

23 <u>**Other Sources**</u>

24 Manual for Complex Litigation § 30.41 (3rd Ed. 1995) ...................................... 8, 18

25 4 Newberg et al., Newberg on Class Actions (4th ed. 2013) § 11:24-25 ................. 18

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This Motion seeks preliminary approval of a class action and Private Attorneys General Act ("PAGA") Settlement by Plaintiffs Enrique Vazquez, Sergio Alfonso Lopez, Maria Viveros and Xochitl Lozano, individually, and on behalf of approximately 4,000 Class Members employed by Defendant Kraft Heinz Food Company ("Defendant", or "KHFC") at any time during the period from September 8, 2012 through the date of preliminary approval (the "Class" or "Class Members").

This is a significant non-reversionary Settlement that was reached after years of extensive and hard-fought litigation, and following an Order from the Court certifying six of the Classes that Plaintiffs sought to certify through their Motion for Class Certification.  *See* Dkt. Nos. 84 and 88 (class certification orders).  Through the proposed Settlement, KHFC will pay a non-reversionary Gross Settlement Amount of at least $3,000,000 to all Participating Class Members without the need for any Class Member to submit a claim for or take any other proactive measure to receive their settlement share.

Plaintiffs and the Class Members are responsible for production and packaging of various Kraft Heinz food products such as frozen chicken taquitos, Lunchables, and the snack-food Corn Nuts.  Plaintiffs allege that KHFC's wage and hour policies and practices have resulted in a failure to pay Class Members all wages owed, and failed to provide them with all meal and rest periods resulting in unpaid wages and derivative penalties.

In addition to the six different classes of employees certified by this Court, the proposed Settlement  also includes an additional class of  employees consisting of al non-exempt employees from KHFC's nine California locations in operation during the Class Period. Because the Settlement and notice distribution plan are the products of an informed and thoroughly-vetted analysis of the claims, defenses, and procedural challenges, and extensive arm's length settlement negotiations by experienced wage

- 1 -

and hour class action counsel, Plaintiffs respectfully request that the Court preliminarily approve the Settlement, order that Notice of the Settlement be distributed to the Class, and set a hearing on Plaintiffs' motion for final approval of the Settlement.

## II.    THE PARTIES AND THE CLASS

### A.    Defendant, Kraft Heinz Foods Company, "KHFC"

Kraft is a global food and beverage leader and is the largest food and beverage company in North America. In July 2015, H. J. Heinz Company, LP merged with Kraft Foods Group, Inc., to form Defendant Kraft Heinz Foods Company with plants operating in San Diego, Escalon, Irvine, Chatsworth and Stockton, California (formerly owned by Legacy Heinz), and in Fullerton, Fresno, San Leandro and Tulare, California (formerly owned by Legacy Kraft).

### B.    Plaintiffs

Plaintiffs were non-exempt, hourly paid employees in California who worked for KHFC during the Class Period. Plaintiff Enrique Vazquez was employed by KHFC in San Diego from 2012 through 2016 in the sanitation department, responsible for cleaning the machines that produce the various food items.  Plaintiff Sergio Alfonzo Lopez was employed by KHFC in San Diego from 1998 through approximately 2014 starting in the sanitation department and moving into kitchen operations.  Plaintiff Maria Viveros was employed by KHFC in Fullerton as a "placer" from 1994 through approximately November 7, 2015.  Plaintiff Xochitl Lozano was employed by KHFC in Fresno from 2004 through February 2019 as a storeroom clerk.

### C.    The Class

Class Members are defined as all persons included in the classes certified by the Court (i.e., Classes 1a, 1c, 2a, 2c, 4 and 5) on October 9, 2018 [Dkt. 88], in addition to all non-exempt production employees employed by KHFC in California at any time during the period from September 8, 2012 through the date of preliminary approval. *See* Declaration of Paul K. Haines ("Haines Decl."), ¶ 11, Exh. A (Stipulation of Class

- 2 -

Action Settlement ("Settlement Agreement")), ¶ 7, 43(d). There are approximately 4,000 members of the Class who worked an estimated 580,070 Compensable Workweeks during the Class Period. Settlement Agreement, ¶11.

## III.   BRIEF SUMMARY OF LITIGATION HISTORY

On September 8, 2016 a class action complaint was filed in the Superior Court of California, County of San Diego entitled *Enriquez Vazquez vs. Kraft Heinz Foods Company*, Case No. 37-2016-00031242-CU-CE-CTL. The *Vazquez* action alleged claims that KHFC rounded time card entries resulting in an underpayment of hourly and overtime wages, failed to provide accurate and itemized wage statements, failed to timely pay all wages due to separated employees, and as result of these allegations, violated the Unfair Competition Law.   KHFC answered the complaint, and on November 7, 2016 removed the case to the United States District Court for the Southern District, Case No. CV-02749-WQH (AGS), ("*Vasquez*"), Dkt. 1.

On October 27, 2016, a related class action complaint was filed in Superior Court of California, County of San Diego entitled *Sergio Alfonso Lopez v. Kraft Heinz Foods Company*, Case No. 37-2016-00038060-CU-CE-CTL ("*Lopez*"). In addition to the claims alleged *Vazquez*, the *Lopez* action included allegations of KHFC's failure to provide compliant rest and meal periods or to pay compensation in lieu thereof.   On January 13, 2017, KHFC removed the *Lopez* case to the United States District Court for the Southern District, Case No. 17-CV-00077-WQH, ("*Lopez*"), Dkt. 1.

On December 14, 2016, Plaintiff Vazquez filed a companion case against Defendant in the Superior Court of California, County of San Diego, Case No. 37-2016-00043997-CU-OE-CTL, ("*Vazquez II*") seeking penalties pursuant to the Private Attorneys General Act ("PAGA") based on the same allegations of the *Vazquez* action.  *Vazquez II* has been stayed since May 26, 2017.

On March 20, 2017, the Parties filed a Joint Motion to Consolidate the *Lopez* and *Vazquez* Actions as the actions involved the same parties, same witnesses, and claims. Dkt. 21.  On May 1, 2017, the Court granted the Joint Motion to Consolidate,

designated *Vazquez* as the lead case, approved Maria Viveros as the third proposed Class Representative, and directed the filing of the Consolidated Complaint (the "Consolidated Action"). Dkt. 26. On May 9, 2017, a Consolidated Class Action Complaint was filed. Dkt. 29.

Over the course of the next nine months leading up to Plaintiffs' Motion for Class Certification, significant discovery was conducted.  For example, nearly thirty depositions were taken, consisting of three separate sessions of a Rule 30(b)(6) deposition; depositions of the named Plaintiffs; and depositions of twenty-three putative Class Members. Significant written discovery was propounded and responded to by the parties, consisting of multiple sets of interrogatories, requests for production and requests for admissions. Haines Decl. ¶ 12.

Plaintiffs also brought a Motion to Compel Further Discovery [Dkt. 42], which was granted in part and denied in part.  The Order limited the discovery which Plaintiffs could conduct to the two locations at which the named Plaintiffs had worked. Dkt. 48.  Although the Order limited the discovery that Plaintiffs could conduct to the two locations at which the named Plaintiffs worked, during the deposition of Defendants' Rule 30(b)(6) witnesses, Plaintiffs' counsel requested a telephonic conference with Magistrate Judge Major, which resulted in expanding the scope of her prior discovery Order [Dkt. 48] to allow limited discovery beyond the two locations at which named Plaintiffs had worked, and which ultimately led to the certification of several classes which included employees outside these two locations at which the named Plaintiffs worked.  Haines Decl., ¶ 12.

During the discovery process, the Parties exchanged over 50,000 pages of documents and KHFC produced 700 excel spreadsheets containing thousands of lines of data that included Class Member payroll and timekeeping records. In connection with evaluating this timekeeping and payroll data, Plaintiffs' counsel retained an expert holding a Ph.D. in economics.  Due to the complex nature of the data and difficulty in evaluating it, Plaintiffs' counsel incurred significant out-of-pocket expert

- 4 -

fees to evaluate the data and to prepare a comprehensive written report in support of Plaintiffs' Motion for Class Certification. Dkt. No. 56-1 at Exh. 12 (J. Michael DuMond, PhD. report); Haines Decl., ¶ 13.

Plaintiffs' counsel was also provided with the names and contact information for over 950 putative Class Members.  Plaintiffs' counsel attempted to reach each by mail and/or telephone for purposes of inquiring about their experiences related to the claims at issue for purposes of the Class Certification motion.  Haines Decl., ¶ 14.

Following this extensive discovery, Plaintiffs' Motion for Class Certification was filed on March 16, 2018 seeking to certify eleven Classes.  Dkt. 56.  On October 9, 2018, the Court issued a provisional order granting in part and denying in part Plaintiffs' certification motion, and finding six of the proposed Classes appropriate for certification (i.e., Classes 1a, 1c, 2a, 2c, 4 and 5). Dkt.  84, 88.

During discussions regarding the content of the Notice of Class Certification to be mailed to the Class, the Parties agreed to attend mediation to explore the possibility of achieving a classwide settlement on behalf of all non-exempt production employees Statewide. The Parties thereafter requested the Court to stay the Consolidated Action, except for KHFC's production of timekeeping and payroll records.  *See* Dkt. 87, 90.

On March 18, 2019, the Parties participated in a private mediation session with Jeff Ross, a well-regarded and experienced wage and hour class action mediator. In connection with mediation, KHFC informally produced additional data beyond what was produced in formal discovery, which allowed Plaintiffs' counsel to assess the strengths and weaknesses of the claims alleged and to calculate potential exposure for damages and penalties on a classwide basis.  Haines Decl., ¶ 15. At the end of the mediation, the Consolidated Action could not be settled.    However, with the mediator's continued involvement over the course of the next several days, settlement of the principle terms was reached by way of a double-blind mediator's proposal that was accepted by both sides. *Id.* Since acceptance of the mediator's proposal, the Parties have continued to negotiate at arms' length the remainder of the terms of the

1   proposed Settlement and its exhibits.

2       In conjunction with and as a term of the proposed Settlement, the Parties

3   stipulated to the filing of a First Amended Consolidated Class Action Complaint to

4   allege claims under PAGA, and to add Xochitl Lozano as an additional Plaintiff.  On

5   June 20, 2019, the First Amended Consolidated Class Action Complaint was filed.

6   Dkt. 102.

7   **IV.   THE PROPOSED SETTLEMENT AND CLASS NOTICE**

8       **A. The Terms of the Settlement**

9       The Parties have agreed this Action may be settled and compromised for the

10  non-reversionary Gross Settlement Amount ("GSA") of *at least* $3,000,000, [1] which

11  includes (a) attorneys' fees of one-third of the GSA; (b) litigation costs not to exceed

12  $175,000; (c) Class Representative Service Payments of $7,500 each to Plaintiffs

13  Vazquez, Lopez, and Viveros, and $3,000 to Plaintiff Lozano in consideration of their

14  initiation and prosecution of this Action in serving as representatives for the Class,

15  and for a general release of claims; (d) claims administration expenses to CPT Group,

16  Inc., not to exceed $50,000; and (e) PAGA payment to the Labor Workforce and

17  Development Agency ("LWDA") of $112,500, which represents the 75% of PAGA

18  civil penalties allocable to the LWDA (with the remaining 25% of PAGA civil

19  penalties, or $37,500 to be paid to the aggrieved employees).  *See* Settlement

20  Agreement, ¶¶ 17, 44. In addition to and outside of the GSA, KHFC will pay the

21  Employer's Share of Payroll Taxes. *Id.*, ¶ 14.

22      After all Court-approved deductions, the Net Settlement Amount ("NSA") is

23  estimated to be no less than $1,637,000, and will be distributed to all Participating

24  Class Members on a proportionate basis without the need to return a claim form.  No

25  portion of the NSA will revert to KHFC under any circumstances.  *See* Settlement

26  [1] In the event that the negotiated number of Compensable Workweeks exceeds what

27  the Parties anticipated at mediation by more than 5% (i.e., should the number of
    workweeks be 5% or more greater than the 580,070 workweeks  negotiated at

28  mediation), then KHFC will increase the Gross Settlement Amount by a
    proportional percentage. *See* Settlement Agreement, ¶ 11.

Agreement, ¶44. Class Members are expected to receive on average, approximately $409 each under the terms of this Settlement.  Haines Decl., ¶ 16.

### B. Formula for Distribution of NSA to Participating Class Members

The NSA will be allocated to each class on the basis of his or her number of Compensable Workweeks worked in relation to the aggregate number of Compensable Workweeks worked by all members of that class during the relevant time period. This method represents the fairest method of distribution to Class Members in relation to their anticipated recovery were the matter to proceed towards a merits determination, as discussed in Section V.B.4, *infra*.

1. **Class 1a Payments**:  **$50,000** for the Compensable Workweeks worked by the members of Certified Class 1a, during the period from September 8, 2012 through October 9, 2019.

2. **Class 2a Payments**:  **$75,000** for the Compensable Workweeks worked by the members of Certified Class 2a, during the period from September 8, 2012 through October 9, 2019.

3. **Class 1c Payments: $5,000** for the Compensable Workweeks worked by the members of the Certified Class 1c, during the period from September 8, 2012 through October 9, 2019.

4. **Class 2c Payments**:  **$200,000** for the Compensable Workweeks worked by the members of Certified Class 2c, during the period from September 8, 2012 through October 9, 2019.

5. **Class 4 Payments**:  **$100,000** for the Compensable Workweeks worked by the members of Certified Class 4, during the period from September 8, 2015 through October 9, 2018.

6. **Class 5 Payments**:  **$200,000** for the Compensable Workweeks worked by the members of Certified Class 5, during the period from September 8, 2013 through October 9, 2019.

7. **PAGA Aggrieved Employees**:  **$37,500** (25% of the $150,000 to the LWDA) for the Compensable Workweeks worked by all Participating Class members, during the period from September 8, 2015 through [the date the

Court enters an order preliminarily approving the settlement].

8. **All Participating Class Members**:  The balance of the NSA, estimated at **$970,000,** will be distributed to all Participating Class Members based on the number of Compensable Workweeks worked during the period from September 8, 2012 through [the date the Court enters an order preliminarily approving the settlement].

*See* Settlement Agreement, ¶ 43(d).

As explained in Section V.B., the amounts allocated to each of these eight Settlement Classes is fair, reasonable, and adequate based on the risks associated with recovering as to each. *Id.*

## V.   THE COURT SHOULD PRELIMINARILY APPROVE THE CLASS ACTION SETTLEMENT AND SET A FINAL FAIRNESS HEARING
### A. Class Action Settlements are Subject to Court Review and Approval.

A class action may not be dismissed, compromised, or settled without the approval of the Court. FRCP Rule 23(e). It is the policy of the federal courts to encourage settlement. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1225 (9th Cir. 1989).  Judicial approval of a class action settlement entails a two-step process: (1) an early (preliminary) review by the Court; and (2) a final review after notice has been distributed to the class members for their comment or objections. *See* Manual for Complex Litigation § 30.41 (3rd Ed. 1995).

### B.   The Proposed Settlement is Fair, Reasonable and Adequate

To receive judicial approval, a proposed class action settlement must be "fair, reasonable, and adequate." *See* Fed. R. Civ. Proc. 23(e)(2).   In making this determination, this Court may consider some or all of the following factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 963 (9th Cir.

- 8 -

2003); *Kullar v. Foot Locker Retail, Inc.*, 168 Cal.App.4th 116, 128 (2008).  Plaintiffs address the relevant factors below.

### 1.    Strength of Plaintiffs' Case

Plaintiffs' Counsel believes the proposed Settlement is in the best interest of the Class based on the extensive discovery and litigation of the claims being settled and released.  The length and risks of trial and other normal perils of litigation that affect the value of the claims were all weighed in reaching the proposed Settlement.  In addition, the defenses argued by KHFC, the prospect of a reversal of the Class certification, an adverse summary judgment ruling, the difficulties of complex litigation, the difficult process of establishing specific damages and various possible delays and uncertainty regarding the outcome of appeals that could have led to decertification of the Classes were also carefully considered by Class Counsel in agreeing to the proposed Settlement.  Haines Decl. ¶ 17.

KHFC has denied and continues to deny any liability or wrongdoing of any kind associated with the claims alleged in this Action, disputes the wages, damages and penalties claimed by the Plaintiffs and the Class Representatives, and further contends that, for any purpose other than settlement, the Action is not appropriate for class or representative treatment, and that decertification of the Classes would be warranted after further discovery would reveal that the Classes were not manageable and could not proceed on a classwide basis. Haines Decl. ¶ 18.

### 2.    Risk, Expense, Complexity, and Duration of Further Litigation

Although Plaintiffs feel strongly about the strengths of their claims, Plaintiffs understand that the Certified Classes could be decertified before trial, leaving very little to no classwide recovery. Plaintiffs also understand that despite certifying some Classes, there has not yet been any determination as to the merits of any claims.

Because Plaintiffs would still need to obtain a judgment, and protect that judgment through an appeal, Plaintiffs' ability to ultimately collect on, and prevail on

their claims was far from guaranteed. Indeed, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *National Rural Tele. Coop. v. DIRECTTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotations omitted). Absent this Settlement the Parties would incur considerably more attorneys' fees and costs through trial and appeal, without any guarantee that Class Members would recover as much as may be recovered through this Settlement. Preliminary approval of this Settlement is warranted, as it avoids those risks and the accompanying expense.

### 3.    Risk of Maintaining Class Action Status

Although this Court had already certified six of Plaintiffs' proposed Settlement Classes at the time that this Settlement was reached, KHFC intended to appeal any judgment recovered by those certified classes. As to the two additional Settlement Classes that were not certified (i.e., All Participating Class Members and PAGA Aggrieved Employees), the predominating claim held by All Participating Class Members was related to a "neutral 15/7 rounding rule," meaning that timekeeping entries were rounded by KHFC to the nearest 15 minute increment for purposes of paying employees (e.g., a timekeeping entry of 8:07 a.m. would round to 8:00 a.m., where a timekeeping entry of 8:08 a.m. would round to 8:15 a.m.).  Haines Decl. ¶ 19. As discussed in Section V.B.4(h), Plaintiffs initially had concerns about the ability to certify a rounding claim, which is why Plaintiffs chose to not move to certify any classes predicated on this theory of liability. *Id.*  As to Plaintiffs' PAGA claim, since there is no requirement that any such claim be certified. *Arias v. Superior Court*, 46 Cal.4th 969 (2009).

### 4.    The Settlement Is a Reasonable Compromise of Claims

The GSA of at least $3,000,000 is significant, and is a fair and reasonable recovery, paying on average approximately $409 to each Participating Class Member after all deductions have been made. Class Counsel relied upon extensive information and documentation produced through formal discovery, and information with the

- 10 -

assistance of their retained expert, Plaintiffs' Counsel was able to calculate the approximate potential damages recoverable by each class, as discussed in each of the following sections.

### a.     Class 1a: (Unpaid Wages: Automatic 30 Minute Unauthorized Meal Deductions – Legacy Heinz Locations)

This certified class was predicated on KHFC's payroll software, which was pre-programmed to automatically deduct 30 minutes of time from a Class Member's timekeeping records when the employee worked a shift greater than 6.0 hours without any "punch-out" or "punch-in" for a meal period.  As a result of this practice, Class Counsel, with the assistance of their expert, have calculated that the members of this certified class are owed approximately $74,216 in unpaid wages for the 30 minutes of time deducted from their timekeeping records, assuming a violation occurred for each shift where punches were missing. Haines Decl. ¶ 20.

KHFC countered that despite being certified, Plaintiffs would not be able to show that all members of Class 1a suffered a violation for each shift at issue as employees would sometimes forget to clock out for their lunches despite receiving them.  Because KHFC believed that many members of this group would testify they received meal periods despite not clocking out, KHFC contended that damages would either be reduced or possibly the Class would be decertified. Based on KHFC's defenses, Plaintiffs reduced the maximum exposure for this claim by 25% to account for the potential of decertification or reduced damages to arrive at an estimated potential exposure of approximately $55,662.  Haines Decl. ¶ 20.  The Settlement allocates $50,000 to the members of Class 1a for these alleged violations.  Settlement Agreement, ¶ 43(d)(i).

### b.     Class 2a: (Meal Periods: Automatic 30 Minute Unauthorized Meal Deductions – Legacy Heinz Locations)

This certified class is predicated on the same alleged unlawful practices as described with respect to Class 1a.  The only difference between these two Classes is

the remedy sought.  Where Class 1a seeks unpaid wages from the auto-deducted 30 minutes, Class 2a seeks a Labor Code section 226.7 premium hour of pay.

As a result of this practice, Class Counsel, with the assistance of their expert, calculated that members of this Certified Class are owed approximately $98,995 in unpaid Labor Code section 226.7 premiums, assuming Plaintiffs could establish a premium was owed in every instance an auto-deduction was made.  However, applying the same 25% discount for the potential of decertification or reduced damages, the estimated classwide potential damage exposure was reduced to approximately $74,246. Haines Decl. ¶ 21.  The Settlement allocates $75,000 to the members of Class 2a for these alleged violations.  Settlement Agreement, ¶ 43(d)(ii).

> c.    **Class 1c: (Unpaid Wages – Unauthorized Deductions for "Unapproved" Hours Worked – Legacy Heinz Locations)**

This certified class is predicated on KHFC's practice of making manual edits to Class Members' timekeeping records which Plaintiffs contend resulted in these employees not being paid all earned wages.  Specifically, Defendant used the following four payroll codes, which in most instances, correspond to a deduction of time from an employee's timekeeping records in increments of either 15 or 30 minutes: (i) *O: UnApproved – Late Out;* (ii) *O: UnApproved – Late Out - OT;* (iii) *I: UnApproved – Early In;* and (iv) *I:  UnApproved – Early In – OT*.  Plaintiffs contend that where these unlawful deductions were made without written employee consent, that KHFC owes back wages.   Assuming that Plaintiffs were able to establish that unpaid wages were owed in every instance where an "unapproved" deduction was taken, Plaintiffs calculate the total unpaid wages are estimated to be approximately $5,506. Haines Decl. ¶ 22.  However, KHFC counters that despite not having written authorizations for these deductions, they were often verbally approved and were taken only with Class Members' consent.  For example, KHFC proffered that sometimes Class Members would forget to clock out at the end of a shift, and that they would inform their supervisor after doing so, who would then make the appropriate deduction

- 12 -

of time from the Class Member's timekeeping records.  Based on KHFC's defenses, Plaintiffs reduced this damage exposure by 10% to account for the potential of decertification or reduced damages to arrive at an estimated exposure of approximately $4,955. Haines Decl. ¶ 22.  For these alleged violations, the Settlement allocates $5,000.  Settlement Agreement, ¶ 43(d)(iii).

### d.   Class 2c: (Meal Period Class – Late Meals - San Diego)

This certified class is predicated on KHFC's practice of failing to pay Section 226.7 premium wages when Class Members were not provided with a meal period prior to the completion of the fifth hour of work.  Although this did not happen frequently, Plaintiffs contend there was no mechanism in place to pay a Labor Code section 226.7 premium when the situation did occur. KHFC counters that just because the timekeeping records reflect a meal period being taken after the completion of the fifth hour of work, does not mean it was because the meal period was not provided, because Class Members may have wished to take their meal period after the completion of the fifth hour of work for a variety of personal relations.  In such instances, KHFC contends that no meal period premium wages are owed.  KHFC further argues it would be necessary to inquire into each instance where a meal period was provided after the completion of the fifth hour of work, leading to individual inquiries that would support decertification or at least a reduction in damages. Haines Decl. ¶ 23.

With the assistance of their expert, Plaintiffs estimated the maximum damages recoverable would be approximately $264,225. To account for KHFC's defenses that could reduce damages or result in decertification, Plaintiffs reduced this damage exposure by 20% resulting in an estimated potential exposure of $211,380. Haines Decl. ¶ 23.  For these alleged violations, the Settlement allocates $200,000. Settlement Agreement, ¶ 43(d)(iv).

### e.   Class 4: (Wage Statement Class)

This certified class is predicated on the alleged violations described above with

1   respect to Classes 1a, 2a, 1c and 2c.  Plaintiffs estimate that were they to prevail on
2   this claim, the approximate maximum potential exposure of wage statement penalties
3   recoverable would be approximately $2,600,000.  Haines Decl. ¶.

4       KHFC counters that based on *Maldonado v. Epsilon Plastics, Inc.,* 22
5   Cal.App.5th 1308, 1336-37 (2018) there can be no wage statement penalties recovered
6   for these violations because the wage statements accurately list the hours worked and
7   wages that were paid, and even if these were later determined to be incorrect, the wage
8   statements accurately reflect what was actually paid to the employees. KHFC further
9   argues that in light of *Kirby v. Immoos Fire Protection, Inc.*, 53 Cal. 4th 1244 (2012),
10  no wage statement penalties can be recovered for the failure to pay Labor Code section
11  226.7 meal or rest period penalty payments (holding that attorneys' fees cannot be
12  recovered for a failure to pay meal period premium payments). KHFC further argues
13  that based on *Stewart v. San Luis Ambulance*, Case No. S246255, a case that is
14  currently pending before the California Supreme Court (in which undersigned counsel
15  is counsel of record), the Court may hold that no wage statement penalties are
16  recoverable based on the failure to pay Labor Code section 226.7 premium wages.[2]
17  Haines Decl. ¶.

18      Based on the foregoing defenses, as well as the reductions taken for recovering
19  on the underlying violations, Plaintiffs reduced the value of this claim by
20  approximately 85% to reach a realistic potential recovery of approximately $390,000.
21  Haines Decl. ¶ 24. For these violations, the Settlement allocates $100,000. Settlement
22  Agreement, ¶ 43(d)(v).

23          **f.    Class 5: (Waiting Time Penalty Class)**

24      This certified class is predicated on the alleged violations described above with
25  respect to Classes 1a, 2a, 1c and 2c.  Plaintiffs estimate that were they to prevail on

26  ---
27  [2] In *Stewart*, one of the issues to be resolved is "whether violations of meal period
    regulations, which require payment of a 'premium wage' for each improper meal
28  period, give rise to claims under sections 203 and 226 of the California Labor Code
    where the employer does not include the premium wage in the employee's pay or
    pay statements during the course of the violations".)

this claim, the approximate maximum exposure for waiting time penalties recoverable would be approximately $1,800,000.  Haines Decl. ¶ 25.

KHFC counters that based on *Kirby, supra,* 53 Cal. 4th 1244, no waiting time penalties can be recovered for the failure to pay Section 226.7 premium wages.  As such, KHFC argues that Plaintiffs could only recover waiting time penalties if they were able to establish an entitlement to the underlying wages, and even if successful in making this showing, would have to show that the underpayment was "willful" within the meaning of Labor Code section 203.  Based on the foregoing defenses to the underlying and derivative claims, Plaintiffs discounted the estimated recovery of this claim by 65% resulting in an estimated potential exposure of $630,000.  Haines Decl. ¶ 25.  For these violations, the Settlement allocates $200,000. Settlement Agreement, ¶ 43(d)(vi).

### g.   PAGA Aggrieved Employees

There are approximately 15,500 pay periods at issue in the relevant PAGA time period. Haines Decl., ¶ 26. Assuming that each pay period triggers a PAGA penalty, the maximum potential exposure is estimated to be approximately $15,500,000. *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1207 (2008) (finding "initial" violation rate applies until employer has been notified that it violated the Labor Code); *Patel v. Nike Retail Svcs., Inc.*, 58 F.Supp.3d 1032, 1042-43 (N.D. Cal. 2014) (citing *Amaral* and applying "initial" violation rate).

However, KHFC presented a number of defenses to the PAGA claim.  As with the other derivative claims, KHFC argued that Plaintiffs would not be able to establish the underlying Labor Code violations, and therefore would not be able to recover any PAGA civil penalties.  KHFC further argues that even if Plaintiffs were able to establish the underlying Labor Code violations, the Court possesses the ability to significantly reduce any PAGA civil penalties that may be awarded. *See* Labor Code section 2699(e)(2) (authorizing reduction in PAGA penalties in trial court's discretion); *Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal.App.4th 1112, 1135

1  (2012) (affirming reduction of PAGA penalties, finding that awarding the full

2  penalties would have been "unjust" because "the evidence showed…defendants took

3  their obligations…seriously and attempted to comply with the law"); *Carrington v.*

4  *Starbucks Corp.* 30 Cal.App.5th 504 (2018) (affirming award of $5 per pay period

5  violation,  a 95% reduction from the maximum penalty); *Fleming v. Covidien, Inc.*,

6  Case No. ED-CV-10-1487-RGK(OPx), 2011 WL 7563047 at *4 (C.D. Cal. Aug. 12,

7  2011) (reducing PAGA penalties by more than 82%, in part because the defendants

8  "were not aware" of the alleged violations).

9         KHFC further argues it would have been able to establish that no PAGA

10  penalties would have been recoverable because once Plaintiffs obtain an underlying

11  judgment, they would no longer be "aggrieved" and therefore would not be able to

12  recover any PAGA penalties.   Such was the finding in *Kim v. Reins Internat.*

13  *California, Inc*, 18 Cal.App.5th 1052 (2017), which has been granted review by the

14  California Supreme Court, Case No. S246911.

15         After taking all of these factors into consideration, Plaintiffs believed it was

16  appropriate to discount the PAGA claim by 95% resulting in an estimated potential

17  recovery of approximately $775,000.  Haines Decl. ¶ 26.  For these alleged violations,

18  the Settlement allocates $150,000 to PAGA with 75% going to the LWDA and 25%

19  going to the Aggrieved Employees. Settlement Agreement, ¶ 43(d)(vii). This amount

20  far exceeds other court-approved settlements allocating civil penalties to the LWDA

21  for PAGA claims.  *See e.g., Hopson v. Hanesbrands Inc., No*. CV-08-0844 EDL, 2008

22  WL 3385452, at *1 (N.D. Cal. Aug. 8, 2008) (approving a PAGA settlement of 0.3%

23  or $1,500); *Garcia v. Gordon Trucking, Inc.,* No. 1:10-CV-0324 AWI SKO, 2012 WL

24  5364575, at *3 (E.D. Cal. Oct. 31, 2012) (approving a PAGA settlement of 0.27%);

25  *Chu v. Wells Fargo Investments, LLC*, 2011 WL 672645 (N.D. Cal. 2011) (approving

26  PAGA payment of $7,500 to LWDA out of $6.9 million settlement); *Lazarin v. Pro*

27  *Unlimited, Inc.*, 2013 WL 3541217 (N.D. Cal. 2013) (approving PAGA payment of

28  $7,500 to LWDA out of $1.25 million settlement).

### h.    All Participating Class Members

In addition to the claims pled above, Plaintiffs pled a claim based upon KHFC's unlawful rounding practices. While this claim was pled in the Consolidated Complaint, Plaintiffs did not move for certification on this theory of relief as there were significant challenges with the data that Plaintiffs were not able to discern until after the Court had already issued its certification order.  However, once these issues were resolved, Plaintiffs' expert concluded there were approximately 237,265 unpaid hours which would have resulted in approximately $3,558,975 in unpaid wages if Plaintiffs were to prevail on this claim.  Haines Decl., ¶ 19.

KHFC counters this claim with the argument that given Plaintiffs' failure to move for certification of this claim, they would have to file a new action for rounding, and would lose over two years of potential exposure given that no tolling of the statute would be permitted based on this underlying action. *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018) (holding that that the statute of limitations is not equitably tolled under the *American Pipe* tolling doctrine for subsequent class actions that might be filed by members of a defined class in an initial class action).

KHFC further argues that in many instances Class Members were actually overpaid as opposed to underpaid as a result of its rounding practices, and therefore, the claim would not be certifiable.  KHFC further argues that even if the case could be certified, its rounding practices are lawful under *See's Candy Shops, Inc. v. Superior Court,* 210 Cal.App.4th 889, 901 (2012) (a time-rounding policy is only legal if "*it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.*") (italics in original), citing 29 C.F.R. § 785.48(b).  Based on these defenses, Plaintiffs reduced the maximum potential exposure by 65% for the possibility of not obtaining class certification and not prevailing on the merits, resulting in an estimated potential exposure for unpaid wages of approximately $1,245,641. Haines Decl. ¶ 19.   The Settlement allocates *no less* than $970,000 for these alleged violations to all

- 17 -

Participating Settlement Class Members.  Settlement Agreement, ¶ 43(d)(viii).

With significant risks for loss occurring at any stage of the litigation and the obvious benefit of assured payments to the Class, the non-reversionary sum of *at least* $3,000,000 is a fair and reasonable recovery for the Class Members.

### 5.   Discovery Completed and the Status of Proceedings

As discussed *supra*, although significant discovery had been completed resulting in certification of six Classes, substantial discovery and litigation remained as there had not been any findings on the substantive issues.  Although trial remained, as to the Certified Classes, Plaintiffs intended to move for summary judgment on damages having computed such damages prior to attending mediation.   These damages calculations form the basis of the allocation of the Settlement funds set forth in Paragraph 43(d) of the Settlement Agreement, and discussed above.

### 6.   The Experienced Views of Counsel

Parties represented by competent counsel are in the best position to produce a settlement that fairly reflects each party's expected outcome in litigation. *See, e.g., In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378 (9th Cir. 1995). Plaintiffs in this Action are represented by experienced wage and hour class action counsel who have certified numerous class actions over contested motions, and who have been appointed Class Counsel in over 100 class action settlements. *See* Haines Decl., ¶¶ 2-10; *see also* Declarations of Michael D. Singer, and Sahag Majarian, II. This factor supports preliminary approval. *See, e.g., Gribble v. Cool Transports Inc.*, No. CV 06-04863 GAF SHx, 2008 WL 5281665 at *9 (C.D. Cal. Dec. 15, 2008) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").

### C.   The Preliminary Approval Standard is Met

At this stage, the Court can grant preliminary approval of the Settlement and direct that notice be given if the proposed Settlement (1) falls within the range of possible approval; (2) appears to be the product of serious, informed and non-collusive negotiations; and (3) has no obvious deficiencies. *See* Manual for Complex Litigation

- 18 -

(3d ed. 1995) § 30.41; 4 Newberg et al., Newberg on Class Actions (4th ed. 2013) § 11:24-25.   The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *See Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

### 1.     The Settlement is Within the Range of Possible Approval

As discussed above, Plaintiffs submit the Settlement is well within the range of possible approval, and in fact, represents an excellent result, such that notice should be provided to the Class.   At the final approval state, the Court will have the opportunity to again assess the reasonableness of the proposed Settlement once the Class has had an opportunity to respond to the Class Notice.

### 2.     The Settlement Resulted from Serious, Informed, and Non-Collusive Negotiations

This Settlement is the result of hard-fought litigation and extensive arm's-length negotiations by counsel and is, therefore, entitled to an initial presumption of fairness. *See In re First Capital Holdings Corp. Financial Products*, Case No. MDL No. 901, 1992 WL 226321, at *2 (C.D. Cal. June 10, 1992) ("Approval of the settlement is discretionary with the court, but there is typically an initial presumption of fairness where the settlement was negotiated at arm's length.").

### 3.     The Settlement is Devoid of Obvious Deficiencies

Preliminary approval of the Settlement is also warranted because there are no obvious deficiencies. The Settlement will provide substantial monetary relief to all Class Members without the need to submit a claim form, and without any reversion of any sort to KHFC.   The amounts proposed for Class Counsel' attorneys' fees and costs, service payments, and PAGA allocation are all reasonable and appropriate and are supported by the facts of this case. Because the Settlement is devoid of obvious deficiencies, this factor supports preliminary approval.

### D.     The Class Notice and Release of Claims.

Due process requires that notice be provided to class members by the best

reasonable method available. *See Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974). Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *See Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).

Following preliminary approval, CPT Group, Inc., the Administrator selected by the Parties, will mail to each Class Member in both English and Spanish, the Court-approved Notice of Class Action Settlement ("Notice"), and Change of Address Form. Haines Decl., ¶ 27; Settlement Agreement, Exhs. 1, 2.  The Notice advises the Class (1) of their rights to participate in the Settlement, (2) that each will be mailed a payment without the need to return a claim form, (3) how to object to the Settlement, (4) how to opt out of the Settlement, (5) how to challenge the information on which their payment will be based, and (6) the procedures and timing for doing each. Haines Decl., ¶ 27.  The Notice informs the Class of the formula for distribution of the NSA, the estimated amount of their payment if they do not request exclusion, and the estimated date their payment will be mailed.  *Id*.

All Class Members who do not request to be excluded by returning a signed, dated and timely postmarked statement as described in the Class Notice will release the Released Claims against the Released Parties. *See* Settlement Agreement, ¶ 28.

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court to grant preliminary approval of the proposed Settlement, conditionally certify the settlement Class pursuant to FRCP Rule 23, appoint Plaintiffs as the Class Representatives, affirm Plaintiffs' attorneys as Class Counsel, approve as to form and content the proposed Notice of Class Action Settlement, appoint CPT Group, Inc., as the Administrator, and to set a final approval hearing date.

Respectfully submitted,

**THE HAINES LAW GROUP, APC**
**COHELAN KHOURY & SINGER,**
**LAW OFFICE OF SAHAG MAJARIAN II**

Date: July 9, 2019                    By:   /s/ *Paul K. Haines*

Attorneys for Plaintiffs and the Classes

Memorandum of Points and Authorities ISO Motion for
Order Granting Preliminary Approval                    Case No. 16-CV-02749-WQH