UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENRIQUE VASQUEZ, SERGIO ALFONSO LOPEZ, MARIA VIVEROS, and XOCHITL LOZANO, individually and on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KRAFT HEINZ FOODS COMPANY, a Pennsylvania Corporation, and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 3:16-cv-2749-WQH-BLM<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion for Order Granting Final Approval of Class Action Settlement and Entering Judgment filed by Plaintiffs Enrique Vasquez, Sergio Alfonso, Maria Viveros, and Xochitl Lozano. (ECF No. 111).

**I. PROCEDURAL BACKGROUND**

On September 8, 2016, Plaintiff Enrique Vasquez, on behalf of himself and others similarly situated, filed a Class Action Complaint in the Superior Court for the State of

California, County of San Diego, against Defendants Kraft Heinz Foods Company ("Kraft") and Does 1 through 100, inclusive. (Ex. A, ECF No. 1-2). On November 7, 2016, Kraft removed the action to this Court and filed an Answer to the Complaint. (ECF Nos. 1, 2).

On March 20, 2017, the parties filed a Joint Motion to Consolidate this action, *Vasquez v. Kraft Heinz Foods Company*, Case No. 16-CV-02479-WQH-AGS, with *Lopez v. H.J. Heinz Company, L.P., et al.*, Case No. 17-CV-00077-WQH-AGS, and to add Plaintiff Maria Viveros as a proposed Class Representative. (ECF No. 21). On May 1, 2017, the Court granted the Joint Motion to Consolidate and designated the *Vasquez* action as the lead case. (ECF No. 26).

On May 9, 2017, Plaintiffs Enrique Vasquez, Sergio Alfonso Lopez, and Maria Viveros, on behalf of themselves and others similarly situated, filed a Consolidated Class Action Complaint against Defendants Kraft and Does 1 through 100, inclusive. (ECF No. 29). Plaintiffs allege that Kraft underpaid hourly and overtime wages, failed to provide accurate and itemized wage statements, failed to provide rest and meal periods or pay compensation for missed rest and meal periods, and failed to timely pay wages due to separated employees. Plaintiffs bring claims against Kraft for violations of the California Labor Code §§ 201-204, 226 *et seq.*, 510, 512, 516, 558, 1182.12, 1194, 1194.2, 1197, and 1198; the Industrial Welfare Commission Wage Order 1; and California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*. Plaintiffs seek damages, statutory penalties, restitution, interest, attorneys' fees, and costs.

On July 12, 2017, Kraft filed an Answer to the Consolidated Complaint. (ECF No. 38). The parties engaged in fact discovery.

On March 16, 2018, Plaintiffs filed a Motion for Class Certification, seeking to certify eleven classes. (ECF No. 56). On November 9, 2018, the Court issued an Order granting in part and denying in part the Motion for Class Certification and certifying six of the proposed classes. (ECF No. 88).

On November 16, 2018, the Court stayed the action pending mediation, except for the production of timekeeping and payroll records. (ECF No. 90). Following mediation, the parties reached a tentative classwide settlement. (*See* ECF No. 93 at 3).

On June 20, 2019, Plaintiffs filed the First Amended Consolidated Class Action Complaint, adding a cause of action under the California Labor Code Private Attorneys General Act of 2004 ("PAGA"), Cal. Lab. Code §§ 2698 *et seq.*, and adding Xochitl Lozano as a fourth proposed Class Representative. (ECF No. 102).

On July 9, 2019, Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement. (ECF No. 105). On August 2, 2019, the Court issued an Order granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. (ECF No. 107). The Court preliminarily approved the Settlement Agreement and the Notice of Class Action Settlement; appointed CPT Group, Inc. ("CPT Group"), as the settlement Administrator; appointed the law firms of Haines Law Group, APC, Cohelan Khoury & Singer, and the Law Office of Sahag Majarian II as Class Counsel; and appointed Plaintiffs Vasquez, Lopez, Viveros, and Lozano as Class Representatives.

On February 21, 2020, Plaintiffs filed a Motion for Order Granting Final Approval of Class Action Settlement and Entering Judgment. (ECF No. 111). Kraft did not file any opposition to the Motion for Order Granting Final Approval of Class Action Settlement and Entering Judgment.

On March 20, 2020, the Court held a final approval hearing. No Class Member appeared.

## II. TERMS OF THE PROPOSED SETTLEMENT

### a. The Class

The Settlement Agreement provides that "'Class Members' shall include all persons included in the classes certified by the Court . . . in addition to all non-exempt employees who were employed by Defendant in California at any time during the Class Period." (Settlement Agreement, Ex. A, Declaration of Paul K. Haines in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, ECF No. 105-1 ¶ 7). The

3

3:16-cv-2749-WQH-BLM

"Class Period" began on September 8, 2012, and continued through August 2, 2019, the date the Court preliminarily approved the Settlement Agreement. (*Id.* ¶ 9). The "classes certified by the Court" include:

> **Class 1a (Unpaid Wages – Paycode Rule: Automatic 30 Minute Unauthorized Meal Deductions – Legacy Heinz Locations):** All current and former non-exempt production employees of Defendant's Legacy Heinz locations, whose timekeeping records reflect a 30 minute deduction of time worked for shifts worked in excess of 6.0 hours where no meal period is reflected in the time punch records, during the time period September 8, 2012 through October 9, 2018;
>
> **Class 1c (Unpaid Wages – Unauthorized Deductions for "Unapproved" Hours Worked – Legacy Heinz Locations):** All current and former non-exempt production employees of Defendant's Legacy Heinz locations whose timekeeping records reflect a deduction of time from the employee's timekeeping records, accompanied by any of the following notations: (i) *UnApproved – Late Out;* (ii) *UnApproved – Late Out - OT;* (iii) *UnApproved – Early In;* or (iv) *UnApproved – Early In – OT*, during the time period September 8, 2012 through October 9, 2018;
>
> **Class 2a (Meal Period Class – Paycode Rule: Automatic 30 Minute Unauthorized Meal Deductions – Legacy Heinz Locations):** All current and former non-exempt production employees of Defendant's Legacy Heinz locations, whose timekeeping records reflect a 30 minute deduction of time worked for shifts worked in excess of 6.0 hours where no meal period is reflected in the time punch records, during the time period September 8, 2012 through October 9, 2018;
>
> **Class 2c (Meal Period Class – Late Meal Periods – San Diego Location):** All current and former non-exempt production employees of Defendant's San Diego location whose timekeeping records reflect a meal period commencing after the employee had worked for 5.0 hours or more, during the time period September 8, 2012 through October 9, 2018;
>
> **Class 4 (Wage Statement Class):** All members of Class 1a, 1c, 2a, and/or 2c, who meet the criteria for class membership for the time period September 8, 2015 through October 9, 2018, and who also received a wage statement from Defendant during this same time period;
>
> **Class 5 (Waiting Time Penalty Class):** All members of Class 1a, 1c, 2a,

and/or 2c, who have separated their employment from Defendant during the
time period September 8, 2013 through October 9, 2018.

(*Id.* ¶ 6; Order on Motion for Class Certification, ECF No. 88 at 2-3).

### b. Class Benefits

Under the terms of the Settlement Agreement, the "Gross Settlement Amount" is $3,000,000, the "maximum amount Defendant shall have to pay in connection with this Settlement." (Settlement Agreement ¶ 17). "[F]ollowing the Court-approved deductions[1] from the Gross Settlement Amount, the remaining amount, the Net Settlement Amount . . . shall be entirely distributed to Participating Class Members"—Class Members who did not opt-out of the Settlement—based upon the following formula:

> Class 1a – From the Net Settlement Amount, $50,000 shall be allocated to the Participating Class Members of Class 1a . . . .
>
> Class 2a – From the Net Settlement Amount, $75,000 shall be allocated to the Participating Class Members of Class 2a . . . .
>
> Class 1c – From the Net Settlement Amount, $5,000 shall be allocated to the Participating Class Members of Class 1c . . . .
>
> Class 2c – From the Net Settlement Amount, $200,000 shall be allocated to the Participating Class Members of Class 2c . . . .
>
> Class 4 – From the Net Settlement Amount, $100,000 shall be allocated to the Participating Class Members of Class 4 . . . .
>
> Class 5 – From the Net Settlement Amount, $200,000 shall be allocated to the Participating Class Members of Class 5 . . . .

(*Id.* ¶ 43(d)(i)-(vi)). "Settlement Payments to members of [each Class] will be based on the total number of Compensable Workweeks worked by the member of [that Class]

---

[1] The parties estimate "the following anticipated Court-approved deductions from the Gross Settlement Amount: $112,500 for[ ] PAGA Payment; $50,000 for Administration Costs; $25,500 for Aggregate Service Payments to four Class Representatives; $175,000 for estimated Class Counsel litigation costs and $1,000,000 for Class Counsel attorneys' fees." (Settlement Agreement ¶ 43(d) n. 1).

5

during the time period September 8, 2013 through October 9, 2018, in relation to the aggregate number of Compensable Workweeks worked by all members of [that Class] during the same time period." (*Id.*). "Compensable Workweeks" are "the weeks during the Class Period during which a Class Member worked at least one shift for Defendant in the State of California." (*Id.* ¶ 11). The Settlement Agreement further provides:

> From the Net Settlement Fund, $37,500 shall be allocated to the Participating PAGA Aggrieved Employees, who are defined as all non-exempt production employees who worked for Defendant during the time period September 8, 2015 through [August 2, 2019]. Settlement Payments to Participating PAGA Aggrieved Employees will be based on the total number of Compensable Workweeks worked by the Aggrieved Employees during the time period September 8, 2015 through [August 2, 2019], in relation to the aggregate number of Compensable Workweeks worked by all Participating PAGA Aggrieved Employees during the same time period.

(*Id.* ¶ 43(d)(vii)). "The remainder of the Net Settlement Amount estimated at $969,500 shall be allocated to all Participating Class Members based upon the total number of Compensable Workweeks worked by the Class Member during the Class Period in relation to the aggregate number of Compensable Workweeks worked by all Class Members during the Class Period." (*Id.* ¶ 43(d)(viii)).

The appointed Administrator, CPT Group, determined that "[a]fter deducting the number of Compensable Workweeks associated with the one (1) person that requested exclusion [from the Settlement], the total number of Compensable Workweeks worked by all Participating Class Members is 519,753.50." (Declaration of Ani S. Sarich on Behalf of CPT Group with Respect to Notification and Settlement Administration ("CPT Decl."), ECF No. 111-5 ¶ 14). The Net Settlement Amount is currently estimated at $1,661,415.28. "Based on estimated settlement calculations, the highest Individual Settlement Payment to be distributed to a Participating Class Member is estimated to be $2,386.02 and the average Individual Settlement Payment is estimated to be $542.77." (*Id.*).

///

///

### c. Class Notice

CPT Group stated that "[b]etween August 19, 2019 and October 29, 2019, CPT received data files from Counsel for Defendants containing Class Members' names, last-known mailing addresses, social security numbers, dates of employment, location of employment, and number of Class 1a, Class 2a, Class 2c, Class 4, Class 5, PAGA, and Compensable Workweeks." (*Id.* ¶ 4). "The initial mailing list contained three thousand sixty-two (3,062) Class Members." (*Id.*). On November 1, 2019, CPT Group searched the National Change of Address Database to "provide[ ] updated addresses for any individual who [ ] moved in the previous four years and [ ] notified the U.S. Postal Service of his or her change of address." (*Id.* ¶ 5).

"On November 15, 2019, [ ] three thousand sixty-two (3,062) Notice Packets were mailed via U.S. First-Class Mail to the identified Class Members." (*Id.* ¶ 6). The Notice Packet included the "Court-approved Class Notice, Change of Address form, . . . and pre-printed return envelope . . . ." (Settlement Agreement ¶ 22). The Class Notice to each Class Member stated the Class Member's "total number of Compensable Workweeks that [the Class Member] worked during each of the applicable Class Periods . . ." and the estimated Settlement Payment the Class Member would receive. (Class Notice, Ex. A, CPT Decl., ECF No. 111-5 at 18).

As of February 19, 2020, 161 Notice Packets were returned to CPT Group as "undeliverable." (CPT Decl., ECF No. 111-5 ¶ 8). "As a result of either Skip Trace, request from Counsel or Class Members, or receipt of updated address information for currently employed Class Members, a total of one hundred forty-one (141) Notice Packets have been re-mailed," and thirty-eight remain undeliverable. (*Id.* ¶ 9).

### d. Opt-Outs and Objections to Settlement

The Class Notice "indicated a deadline of January 14, 2020, to dispute the total number of work weeks, [or] to object or request exclusion from the settlement." (*Id.* ¶ 6). As of February 19, 2020, CPT Group "received one (1) request for exclusion from Victor Duarte, and no notices of objection." (*Id.* ¶ 11). As of February 19, 2020, CPT Group

"report[ed] a total of three thousand sixty-one (3,061) Participating Class Members, representing 99.97% of the Class." (*Id.* ¶ 12).

### e. Notice and Administration Costs

CPT Group "print[ed] and mail[ed] to Class Members the Notice of Class Action Settlement, Change of Address Form, in English and Spanish, and a pre-paid return envelope." (*Id.* ¶ 2). CPT Group also "process[ed] undeliverable mail and locat[ed] updated addresses for Class Members; [ ] receiv[ed] other communications about the settlement; [ ] notif[ied] the parties of the number of Class Members that filed timely requests for exclusion; [ ] notif[ied] the parties of the number of Class Members who filed untimely or deficient requests for exclusion . . .; [and] establish[ed] and maintain[ed] a toll-free hotline where Class Members c[ould] speak to case representatives . . . ." (*Id.*). CPT Group is still tasked with answering Class Member questions and "issuing and mailing settlement checks, including the Class Representative Service Awards to the Plaintiffs, to all Participating Class Members with the appropriate tax reporting." (*Id.*)

"Under the Settlement Agreement, administration fees were estimated to be $50,000." (*Id.* ¶ 16; *see* Settlement Agreement ¶ 43(d) n. 1). "CPT estimated for a Class of 3,062, a bid of $35,500.00 to administer the Settlement." (CPT Decl., ECF No. 111-5 ¶ 16). Kraft also incurred "fees for a data expert in the sum of $15,776.00" to "isolate the number of Compensable Workweeks worked by each Class Member in each Subclass." (*Id.*).

### f. Attorneys' Fees and Costs

Class Counsel requests an award of attorneys' fees of $1,000,000 and reimbursement of Class Counsel's litigation costs of $150,584.72. "Class Counsel seeks an attorneys' fee award of 33.33% of the common fund . . . ." (ECF No. 111-1). Attorney Michael D. Singer stated in a Declaration that, "[t]o produce the favorable results on behalf of the Class, Class Counsel has expended 2,374.6 attorney and para-professional hours since the inception of this case through the present resulting in a lodestar fee of $1,230,315.00." (Declaration of Michael D. Singer in Support of Plaintiff's Motion for

Final Approval of Class Action Settlement ("Singer Decl."), ECF No. 111-3 ¶ 13). "To date, Class Counsel has advanced costs of $150,584.72 [ ] in this action." (*Id.* ¶ 29; *see* Declaration of Paul K. Haines in Support of Plaintiff's Motion for Final Approval of Class Action Settlement ("Haines Decl."), ECF No. 111-2 ¶¶ 15, 17; Declaration of Sahag Majarian II in Support of Plaintiff's Motion for Final Approval of Class Action Settlement ("Majarian Decl."), ECF No. 111-4 ¶ 9).

### g. Incentive Award

"Class Counsel requests the sum of $7,500 be awarded to Plaintiffs Enrique Vasquez, Sergio Alfonso Lopez, and Maria Viveros each, and $3,000 to Plaintiff Xochitl Lozano . . . ." (ECF No. 111-1 at 32).

## III. FAIRNESS OF THE SETTLEMENT

Plaintiffs assert that the Settlement is in the best interests of the Class. Plaintiffs assert that the parties weighed the risks and balances of litigating this case through trial. Plaintiffs assert that "the affirmative defenses asserted by Defendant[ ], the uncertainty of maintaining Rule 23 certification, the prospect of a potential adverse summary judgment ruling, the difficulties of complex litigation, the lengthy process of establishing specific damages and various possible delays and appeals, were also carefully considered by Class Counsel in arriving at the proposed settlement." (ECF No. 111-1 at 18). Plaintiffs further assert that "[t]he absence of any objections and only one opt-out, resulting in a 99.97% participation rate, supports a strong presumption of fairness and that the Settlement is adequate and reasonable." (*Id.* at 17).

"To guard against th[e] potential for class action abuse, Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 946 (9th Cir. 2011) (citing Fed R. Civ. P. 23(e)(2)). The Court of Appeals for the Ninth Circuit has a "strong judicial policy" in support of class action settlements. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

However, when presented with a motion to finally approve a class action settlement, "judges have the responsibility of ensuring fairness to all members of the class . . . ." *Staton v. Boeing Co.,* 327 F.3d 938, 952 (9th Cir. 2003). Ultimately, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n of San Francisco,* 688 F.2d 615, 625 (9th Cir. 1982).

Courts consider several factors in determining the fairness of a proposed settlement, including:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th Cir. 1998) (quotation omitted); *see Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1376 (9th Cir. 1993) (holding that only one factor was necessary to demonstrate that the district court was acting within its discretion in approving the settlement).

The parties have been litigating this case for three and a half years. Nearly thirty depositions were taken, and "[s]ignificant written discovery was propounded and responded to by the parties." (Haines Decl., ECF No. 111-2 ¶ 10). "[T]he Parties exchanged over 50,000 pages of documents and Defendant produced 700 excel spreadsheets containing thousands of lines of data that included Class Member payroll and timekeeping records." (*Id.* ¶ 11). "Plaintiffs' counsel interview[ed] over one hundred Class Members." (*Id.* ¶ 12). Class Counsel retained an economics expert. "Significant discovery was

conducted in this litigation," allowing the parties to make an informed settlement analysis. (*Id.* ¶ 10).

"On March 18, 2019, the Parties participated in a private mediation session with Jeff Ross, a well-regarded and experienced wage and hour class action mediator." (*Id.* ¶ 13; *see In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 948 (explaining that participation of a mediator is not dispositive but is "a factor weighing in favor of a finding of non-collusiveness")). As a result of mediation, "settlement of the principle terms was reached by way of a double-blind mediator's proposal that was accepted by both sides." (Haines Decl., ECF No. 111-2 ¶ 10). The parties' extensive investigation, discovery, and subsequent mediation weigh in favor of granting final approval.

The Participating Class Members' estimated recovery is $1,661,415.28. (CPT Decl., ECF No. 111-5 ¶ 14). "The Gross Settlement Amount is $3,000,000 and will have the following anticipated deductions: attorneys' fees of $1,000,000.00, litigation costs of $150,584.72, Class Representative Service Awards of $25,500.00, PAGA civil penalties of $112,500.00 to the Labor Workforce and Development Agency, and settlement administration expenses of $50,000.00." (*Id.* ¶ 13). "Based on estimated settlement calculations, the highest Individual Settlement Payment to be distributed to a Participating Class Member is estimated to be $2,386.02 and the average Individual Settlement Payment is estimated to be $542.77." (*Id.* ¶ 14). Only one individual has opted out of the Settlement, and no objections to the Settlement have been submitted. *See Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 837 (9th Cir. 1976) ("The opposition of a significant number of the members of the class to a proposed settlement is a factor to be considered when approving a settlement." (citations omitted)); *see also Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (finding "persuasive" the fact that 84% of the Class filed no opposition); *Shames v. Hertz Corp.*, No. 07-CV-2174-MMA(WMC), 2012 U.S. Dist. LEXIS 158577, at *25-26 (S.D. Cal. Nov. 5, 2012) (explaining that the absence of a large number of objectors supports the fairness, reasonableness, and adequacy of the settlement). Given the lack of objection by the Class Members and the risk, expense, complexity, and

duration of further litigation, the Court finds that the amount and terms of the proposed monetary benefits to the Participating Class Members are fair and reasonable.

Class Counsel included attorneys at three different law firms with significant experience in class action and wage and hour litigation. The attorneys have a strong understanding of the case from litigating against Defendant for three and a half years and from prior experience in similar cases. (Haines Decl., ECF No. 111-2 ¶¶ 3-8; Singer Decl., ECF No. 111-3 ¶¶ 3-9). Plaintiffs' attorneys are well qualified to conduct this litigation and to assess its settlement value. The Court finds that the Class has been fairly and adequately represented during settlement negotiations.

The Court finds that the settlement is fundamentally "fair, adequate and reasonable" and that no evidence of collusion exists. Fed. R. Civ. P. 23(e).

## IV. ATTORNEYS' FEES AND COSTS

Plaintiffs request that the Court award $1,000,000 in attorneys' fees, $150,584.72 in litigation costs, and $50,000 in administrative costs.

### a. <u>Attorneys' Fees</u>

Plaintiffs request that the Court award $1,000,000 in attorneys' fees. Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942. Under the percentage-of-recovery method, "courts typically calculate 25% of the fund as the 'benchmark' for a reason-able fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *Id.* (quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)).

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by

12

a reason-able hourly rate for the region and for the experience of the lawyer." *Id.* at 941 (citing *Stanton*, 327 F.3d at 965). After computing the lodestar figure, the district court may then adjust the figure upward or downward taking into consideration twelve "reasonableness" factors: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Morales v. City of San Rafael,* 96 F.3d 359, 363 n. 8 (9th Cir. 1996). "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983), *superseded by the Prison Litigation Reform Act on other grounds*. However, trial courts may use "rough" estimations, so long as they apply the correct standard. *Fox v. Vice*, 563 U.S. 826, 838 (2011).

In this case, Class Counsel provided current billing rates for the sixteen paralegals and attorneys who worked on this case, ranging from $175 per hour for paralegals and $325 per hour for a second-year associate to $900 per hour for a forty-sixth-year partner. (*See* Ex. 1, Singer Decl., ECF No. 111-3 at 23-24 ($900/hour for Timothy D. Cohelan (of Cohelan Khoury & Singer ("CKS") with 46 years' experience); $875/hour for Isam C. Khoury (of CKS with 45 years' experience) and Michael D. Singer (of CKS with 36 years' experience); $725/hour for Diana M. Khoury (of CKS with 33 years' experience); $700/hour for Sahag Majarian II (of the Law Offices of Sahag Majarian II ("LOSM") with 29 years' experience); $650/hour for Paul K. Haines (of Haines Law Group ("HLG") with 13 years' experience); $550/hour for Marta Manus (of CKS with 12 years' experience), Janine R. Menhennet (formerly of CKS with 28 years' experience), and Seam M. Blakely and Tuvia Korobkin (both of HLG with 10 years' experience); $400/hour for Daniel Brown

and Stacey M. Shim (both of HLG with 4 years' experience); $325/hour for Jamin Xu (of HLG with 2 years' experience); $200/hour for Amber Worden (a certified paralegal of CKS); and $175/hour for all other paralegals)). Upon consideration of the Declarations and filings submitted by Class Counsel, the attorneys' experience, and other rates approved in this district, the Court finds that the requested rates are reasonable. *See Hunter v. Nature's Way Prods., LLC*, No. 3:16-cv-532-WQH-AGS, 2020 U.S. Dist. LEXIS 1706, at *22 (S.D. Cal. Jan. 6, 2020) (finding hourly rates ranging from $500 to $750 reasonable); *Obesity Research Inst., LLC v. Fiber Research Int'l, LLC*, No. 15-cv-595-BAS-MDD, 2016 U.S. Dist. LEXIS 52463, at *8 (S.D. Cal. Apr. 18, 2016) (finding hourly rates of $400 for a sixth-year associate and $725 for a thirty-fifth-year partner reasonable); *Makaeff v. Trump Univ., LLC*, No. 10cv1940 GPC (WVG), 2015 U.S. Dist. LEXIS 46749, at *17 (S.D. Cal. Apr. 9, 2015) (finding hourly rates ranging from $250 to $825 reasonable).

Class Counsel provided general summaries of each firm's billing time. Class Counsel expended approximately 2,374.6 hours prosecuting this action. CKS expended 513.1 hours prosecuting this action. HLG expended 1,823.2 hours prosecuting this action. LOSM expended 38.3 hours prosecuting this action. (*See* Haines Decl., ECF No. 111-2 ¶ 15; Singer Decl., ECF No. 111-3 ¶¶ 23-26 and Ex. 1; Majarian Decl., ECF No. 111-4 ¶¶ 7-9). The summaries and Declarations provide a sufficient showing of the hours Class Counsel expended on this case.

As of November 19, 2019, Class Counsel's total fee lodestar in this action was $1,230,315.00. The total lodestar for CKS was $27,665.92. The total lodestar for HLG was $104,783.72. The total lodestar for LOSM was $18,135.08. (Ex. 1, Singer Decl., ECF No. 111-3 at 24). Class Counsel's requested $1,000,000 in attorneys' fees represents 33.33% of the common fund and approximately 81.28% of the lodestar. Courts in this circuit have routinely authorized similar awards. *See, e.g.*, *Shames*, 2012 U.S. Dist. LEXIS 158577, at *64 ("In light of this presumptively reasonable lodestar, Plaintiffs' $5,123,336.00 fee request is reasonable, as it represents a *20% reduction* of the lodestar."); *Stuart v. RadioShack Corp.*, No. C-07-4499-EMC, 2010 U.S. Dist. LEXIS, at *18 (N.D. Cal. Aug.

9, 2010) (finding 33% fee award "well within the range of percentages which courts have upheld as reasonable in other class action lawsuits"); *Ripee v. Bos. Mkt. Corp.*, No. 05cv1359 BTM (JMA), 2006 U.S. Dist. LEXIS 101136 (S.D. Cal. Oct. 10, 2006) (award of 40% of $3,750,000 wage and hour class action settlement). The Court approves the award of attorneys' fees in the amount of $1,000,000.

### b. Litigation Costs

Plaintiffs request that the Court award $150,584.72 in litigation costs. Class Counsel is entitled to reimbursement of the out-of-pocket costs they reasonably incurred investigating and prosecuting this case. *See Staton,* 327 F.3d at 974. Class Counsel expended $150,584.72 in un-reimbursed expenses in the prosecution of this action. CKS incurred $27,665.92 in costs. HLG incurred $104,783.72 in costs. LOSM incurred $18,135.08 in costs. (Ex. 1, Singer Decl., ECF No. 111-3 at 24). No Class Member has objected to the request for reimbursement of $150,584.72 in costs. The Court finds that Class Counsel's out-of-pocket costs were reasonably incurred in connection with the prosecution of this litigation, were advanced by Class Counsel for the benefit of the Class, and shall be reimbursed in full in the amount requested. The Court approves the request for litigation costs and expenses in the amount of $150,584.72.

### c. Administrative Costs

Plaintiffs request that the Court award $50,000 to CPT Group, the appointed Administrator. "CPT estimated for a class of 3,062, a bid of $35,000.00 to administer the Settlement." (CPT Decl., ECF No. 111-5 ¶ 16). Plaintiffs assert that "CPT has administered, and will continue to administer the Settlement following final approval, by calculating Settlement Payment awards, printing and mailing settlement checks, issuing IRS W-2 and 1099 forms, reporting taxes to the appropriate agencies, and responding to inquiries." (ECF No. 111-1 at 33). In addition, Defendant Kraft retained a data expert and incurred fees of $15,766.00, which was required "to determine the pay-out amounts to each Participating Class Member." (CPT Decl., ECF No. 111-5 ¶ 16). Plaintiffs request that Kraft's expert fee be included as part of the $50,000 to CPT Group. Courts regularly award

administrative costs associated with providing notice to the class. *See, e.g., Odrick v. UnionBanCal Corp.*, No. C 10-5565 SBA, 2012 U.S. Dist. LEXIS 171413, at *17-18 (N.D. Cal. Dec. 3, 2012). The Court concludes that CPT Group's costs and the costs of the expert were reasonably incurred for the benefit of the Class. The Court approves Class Counsel's requests for administrative costs in the amount of $50,000.

## V. INCENTIVE AWARD

Plaintiffs request incentive awards of $7,500 to Plaintiffs Vasquez, Lopez, and Viveros, and $3,000 to Plaintiff Lozano. Incentive awards are "fairly typical" discretionary awards "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (emphasis omitted) (citations omitted). In assessing the reasonableness of an incentive award, several district courts in the Ninth Circuit have applied the five-factor test set forth in *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995), which analyzes (1) risk to the class representative in commencing a class action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation. *See, e.g.*, *Miller v. Wise Co.*, ED CV17-00616 JAK (PLAx), 2020 U.S. Dist. LEXIS 40032, at *37 (C.D. Cal. Feb. 11, 2020); *Hunter*, 2020 U.S. Dist. LEXIS 1706, at *25-26; *Rodriguez v. Penske Logistics, LLC*, No. 2:14-cv-02061-KJM-CKD, 2019 U.S. Dist. LEXIS 9441, at *39 (E.D. Cal. Jan. 17, 2019); *Vietnam Veterans of Am. v. CIA*, No. 09-cv-00037-CW, 2018 U.S. Dist. LEXIS 172135, at *3-4 (N.D. Cal. Oct. 4, 2018).

"Class Counsel requests the sum of $7,500 be awarded to Plaintiffs Enrique Vasquez, Sergio Alfonso Lopez, and Maria Viveros each, and $3,000 to Plaintiff Xochitl Lozano for their commitment to prosecuting this Action, their efforts, risks undertaken for the payment of attorneys' fees and costs if the Action had been lost, general releases of all

claims arising from their employment, stigma upon future employment opportunities for having sued a former employer, as well as having obtained substantial recoveries for every Class Member." (ECF No. 111-1 at 32). The *Van Vranken* factors weigh in favor of approving the service award requested. Plaintiff Vasquez initiated this action, "searched for and found over 475 pages of earning statements, time punch details, tax documents, and health benefits information," answered written discovery requests, appeared for deposition, attended mediation, and reviewed the Settlement Agreement. (Declaration of Enrique Vasquez in Support of Plaintiffs' Motion for Final Approval of Settlement, ECF No. 111-6 ¶¶ 5-10). Plaintiff Lopez initiated the action consolidated with this case and has been "actively involved in this case since . . . October 2016." (Declaration of Sergio Alfonso Lopez in Support of Plaintiffs' Motion for Final Approval of Settlement, ECF No. 111-7 ¶ 4). Plaintiff Lopez gathered documents, reviewed and analyzed documents produced by Kraft, discussed case strategy, responded to formal discovery requests, and sat for deposition. (*Id.* ¶ 4). Plaintiff Viveros has been actively involved in the case since joining the lawsuit and has gathered documents, reviewed and analyzed documents produced by Kraft, discussed case strategy, responded to formal discovery requests, and sat for deposition. (Declaration of Maria Viveros in Support of Plaintiffs' Motion for Final Approval of Settlement, ECF No. 111-8 ¶ 4). Plaintiff Lozano has been actively involved in the case since joining the lawsuit and has gathered documents, reviewed and analyzed documents produced by Kraft, and discussed case strategy. (Declaration of Xochitl Lozano in Support of Plaintiffs' Motion for Final Approval of Settlement, ECF No. 111-9 ¶ 4).

The Plaintiffs have protected the interests of the Class Members and have participated in all aspects of the case. The Class has benefitted from these actions by receiving a settlement. No Class Members has objected to an incentive award of $7,500 for Plaintiffs Vasquez, Lopez, and Viveros, and $3,000 for Plaintiff Lozano. The incentive awards are within the acceptable range of approval and do not appear to be the result of collusion. *See, e.g., Van Vranken,* 901 F. Supp. at 300 (approving an award of $50,000 for

the named plaintiff); *Williams v. Costco Wholesale Corp.*, No. 02cv2003 IEG (AJB), 2012 U.S. Dist. LEXIS 67731, at *20 (S.D. Cal. Jul. 7, 2010) (approving a $5,000 award to a class representative in an antitrust case settling for $440,000). The Court finds that the requested incentive awards of $7,500 each to Plaintiffs Enrique Vasquez, Sergio Alfonso Lopez, and Maria Viveros, and $3,000 to Plaintiff Xochitl Lozano are reasonable.

## VI. CONCLUSION

Having received and considered the proposed Settlement, the supporting papers filed by the parties, and the evidence and argument received by the Court in conjunction with the Motion for Order Granting Preliminary Approval of Class Action Settlement (ECF No. 105), and the Motion for Order Granting Final Approval of Class Action Settlement (ECF No. 111), the Court grants final approval of the Settlement. The Court HEREBY ORDERS AND MAKES THE FOLLOWING DETERMINATIONS:

1. Pursuant to the Court's Order granting preliminary approval of class action settlement, the Court-approved Notice of Class Action Settlement, Change of Address form, in English and Spanish, and a pre-printed return envelope ("Notice Packet") were mailed to all Class Members by first-class mail. The Notice Packet notified Class Members of their rights (1) to receive their share of the Settlement without a claim form; (2) to object to the Settlement and the deadline to submit an objection; (3) to request exclusion and the deadline to do so; (4) to appear at the Final Approval Hearing; and (5) the number of weeks each Class Member worked during the Class Period and the estimated amount of their Individual Settlement Payment.

2. The Court finds and determines that this notice procedure afforded adequate protections to Class Members and provides the basis for the Court to make an informed decision regarding approval of the Settlement based on the response of the Class. No objections were presented by any Class Member, and only one individual, identified in the CPT Declaration, requested exclusion from the Settlement. The Court finds and determines that the notice provided in this case was the best notice practicable, which satisfied the requirements of law and due process.

3. The Court further finds and determines that the terms of the Settlement are fair, reasonable, and adequate to the Class and to each Class Member and that the Settlement is ordered finally approved, and that all terms and provisions of the Settlement should be and hereby are ordered to be consummated.

4. The Court confirms the law firms of Cohelan Khoury & Singer, Haines Law Group, APC, and the Law Office of Sahag Majarian II as Class Counsel.

5. The Court confirms the Plaintiffs Enrique Vasquez, Sergio Alfonso Lopez, Maria Viveros, and Xochitl Lozano as the Class Representatives.

6. The Court finds and determines that the payments to be paid to 3,061 Participating Class Members as provided for by the Settlement Agreement are fair and reasonable. The Court hereby grants final approval to, and orders payment of, those amounts to be made in accordance with the terms of the Settlement Agreement.

7. Pursuant to the terms of the Settlement, and the authorities, evidence and argument submitted by Class Counsel, the Court hereby awards Class Counsel attorneys' fees of $1,000,000 and reimbursement of their litigation costs of $150,584.72. The Court finds and determines that such amounts are fair and reasonable and orders the Administrator to make these payments in accordance with the terms of the Settlement Agreement.

8. The Court approves Class Representative service payments of $7,500 to Enrique Vasquez, $7,500 to Sergio Alfonso Lopez, and $7,500 to Maria Viveros, and $3,000 to Xochitl Lozano in consideration of (1) their initiation and prosecution of their actions; (2) service as representatives of the Class; (3) work performed; (4) risks undertaken for the payment of costs in the event the case had not concluded successfully; (5) general releases of all claims; and (6) the substantial benefits conferred upon all Participating Class Members.

9. The Court finds and determines that payment to the California Labor and Workforce Development Agency of $112,500 as its share of the Settlement of civil penalties under the Private Attorneys General Act is fair, reasonable, and appropriate. The

Court hereby grants final approval to and orders that amount be paid in accordance with the Settlement Agreement.

10. The Court further approves the payment of the fees and costs of the appointed Administrator, CPT Group, Inc., of $50,000 for services rendered and to be rendered in connection with the completion of its administrative duties pursuant to the Settlement.

11. Without affecting the finality of this Order in any way, the Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of this Order and the Settlement.

12. Nothing in this Order shall preclude any action to enforce the parties' obligations under the Settlement or under this Order.

13. The parties are hereby ordered to comply with the terms of the Settlement.

14. The parties shall bear their own costs and attorneys' fees except as otherwise provided by the Settlement Agreement and this Order granting Class Counsel's attorneys' fees and reimbursement of litigation costs.

15. The Court will enter final judgment in this case in accordance with the terms of the Settlement, Order granting preliminary approval of class action settlement, and this Order. The parties shall submit a proposed judgment.

Dated: April 1, 2020

Hon. William Q. Hayes
United States District Court